BELLOTTI, ATTORNEY GENERAL OF MASSA-
CHUSETTS, ET AL. *v.* BAIRD ET AL.

No. 75–73. Argued March 23, 1976—Decided July 1, 1976*

*Together with No. 75–109, *Hunerwadel* v. *Baird et al.,* also on
appeal from the same court.

*S. Stephen Rosenfeld,* Assistant Attorney General of Massachusetts, argued the cause for appellants in No. 75–73. With him on the brief were *Francis X. Bellotti,* Attorney General, *pro se,* and *Michael Eby* and *Garrick F. Cole,* Assistant Attorneys General. *Brian A. Riley* argued the cause *pro hac vice* for appellant in No. 75–109. With him on the brief were *Thomas P. McMahon* and *Thomas P. Russell.*

*Roy Lucas* argued the cause and filed a brief for appellees in both cases.

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

In this litigation, a three-judge District Court for the District of Massachusetts enjoined the operation of certain provisions of a 1974 Massachusetts statute that govern the type of consent required before an abortion may

be performed on an unmarried woman under the age of 18. In so acting, the court denied by implication a motion by appellants that the court abstain from deciding the issue pending authoritative construction of the statute by the Supreme Judicial Court of Massachusetts. We hold that the court should have abstained, and we vacate the judgment and remand the cases for certification of relevant issues of state law to the Supreme Judicial Court, and for abstention pending the decision of that tribunal.

I

On August 2, 1974, the General Court of Massachusetts (Legislature), over the Governor's veto, enacted legislation entitled "An Act to protect unborn children and maternal health within present constitutional limits." The Act, Mass. Acts and Resolves 1974, c. 706, § 1, amended Mass. Gen. Laws Ann., c. 112 (Registration of Certain Professions and Occupations), by adding §§ 12H through 12R.[1] Section 12P provides:

> "(1) If the mother is less than eighteen years of age and has not married, the consent of both the mother and her parents is required. If one or both of the mother's parents refuse such consent, consent may be obtained by order of a judge of the superior

---

[1] Prior to the passage of the 1974 Act there were already in existence a § 12H and a § 12I of c. 112. These were added by Mass. Acts and Resolves 1973, c. 173, § 1, and c. 521, § 1, respectively. The former called for the printing of the physician's name on a prescription blank, and the latter concerned one's right not to participate in an abortion or sterilization procedure, and to be free from damages claims or discipline for exercising that right.

These pre-existing §§ 12H and 12I have not been repealed. Consequently, due to this legislative oversight, Massachusetts has two statutes denominated § 12H of c. 112, and two denominated § 12I of that chapter. This opinion, however, concerns only the 1974 legislation.

court for good cause shown, after such hearing as he deems necessary. Such a hearing will not require the appointment of a guardian for the mother.

"If one of the parents has died or has deserted his or her family, consent by the remaining parent is sufficient. If both parents have died or have deserted their family, consent of the mother's guardian or other person having duties similar to a guardian, or any person who had assumed the care and custody of the mother is sufficient.

"(2) The commissioner of public health shall prescribe a written form for such consent. Such form shall be signed by the proper person or persons and given to the physician performing the abortion who shall maintain it in his permanent files.

"Nothing in this section shall be construed as abolishing or limiting any common law rights of any other person or persons relative to consent to the performance of an abortion for purposes of any civil action or any injunctive relief under section twelve R."

All nonemergency abortions are made subject to the provisions of § 12P by § 12N.[2]  Violations of § 12N are

---

[2] "*Section 12N.*  Except in an emergency requiring immediate action, no abortion may be performed under sections twelve *I* [before 24 weeks] or twelve *J* [24 weeks or more] unless

"(1) the written informed consent of the proper person or persons has been delivered to the physician performing the abortion as set forth in section twelve P and

"(2) if the abortion is during or after the thirteenth week of pregnancy it is performed in a hospital duly authorized to provide facilities for general surgery.

"Except in an emergency requiring immediate action no abortion may be performed under section twelve J unless performed in a hospital duly authorized to provide facilities for obstetrical services."

punishable under § 12Q by a fine of not less than $100 nor more than $2,000.[3]   Section 12R provides that the Attorney General or any person whose consent is required may petition the superior court for an order enjoining the performance of any abortion.[4]

## II

On October 30, 1974, one day prior to the effective date of the Act,[5] plaintiffs, who are appellees here, filed this action in the United States District Court for the District of Massachusetts, asserting jurisdiction under 28 U. S. C. §§ 1343 (3), 1331, and 2201, and 42 U. S. C. § 1983, and claiming that § 12P violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment.   They sought injunctive and declaratory relief, and requested the empaneling of a three-judge court pursuant to 28 U. S. C. §§ 2281 and 2284.

On October 31, the single District Judge issued an order temporarily restraining the enforcement of the parental-consent requirement of § 12P, and accepting the request for a three-judge court.[6]   Record Doc. 2.

---

[3] Section 12Q provides in pertinent part:

"Any person who willfully violates the provisions of sections twelve N or twelve O shall be punished by a fine of not less than one hundred dollars nor more than two thousand dollars."

[4] *"Section 12R.*   The attorney general or any person whose consent is required either pursuant to section twelve P or under common law, may petition the superior court for an order enjoining the performance of any abortion that may be performed contrary to the provisions of sections twelve *I* through twelve Q."

[5] Unless a statute is declared an emergency or may not be made the subject of a referendum petition, a law passed by the General Court does not take effect "earlier than ninety days after it has become a law."   Mass. Const. Amend., Art. 48, Referendum, pt. I (1963).

[6] Because of the temporary restraining order and the injunction subsequently issued by the three-judge court, Jurisdictional State-

The plaintiffs, and the classes they purported to represent, are:

1. William Baird, a citizen of New York.

2. Parents Aid Society, Inc., a Massachusetts not-for-profit corporation. Baird is president of the corporation and is director and chief counselor of the center it operates in Boston for the purpose of providing, *inter alia*, abortion and counseling services. Baird and Parents Aid claim to represent all abortion centers and their administrators in Massachusetts who, on a regular and recurring basis, deal with pregnant minors. App. 13, 43.

3. Mary Moes I, II, III, and IV, four minors under the age of 18, pregnant at the time of the filing of the suit, and residing in Massachusetts. Each alleged that she wished to terminate her pregnancy and did not wish to inform either of her parents.[7] *Id.*, at 16–18, 19–22. The Moes claimed to represent all pregnant minors capa-

ment in No. 75–73, pp. A–33, A–34; App. 45–46, the parental-consent provisions of § 12P have not yet been effective.

[7] The complaint as originally filed, named only Mary Moe I and Mary Moe II as the pregnant minor plaintiffs, with affidavits concerning their status attached. App. 16–18. Thereafter, in November 1974, affidavits were executed by Mary Moe III and Mary Moe IV. *Id.*, at 19–22. The motion to certify the plaintiffs' classes, filed December 9, 1974, refers to the four Mary Moes. Similarly, the District Court referred to the fact that four Mary Moes were named in the action. 393 F. Supp. 847, 849, and n. 1 (1975). The record does not disclose how or when Mary Moes III and IV were added as parties plaintiff. In any event, Mary Moes II, III, and IV were dismissed from the suit for failure to adduce evidence supporting their standing, *id.*, at 849 n. 1, and they have not appealed that ruling. The way in which Mary Moes III and IV entered the case, therefore, is of no concern to us here.

We note that the fact the pregnancy of Mary Moe I has been terminated (through an abortion performed under the protection of the temporary restraining order entered by the District Court, *id.*, at 850 n. 4) in no way moots the case. *Roe* v. *Wade,* 410 U. S. 113, 124–125 (1973).

ble of, and willing to give, informed consent to an abortion, but who decline to seek the consent of both parents, as required by § 12P. App. 13, 43.

4. Gerald Zupnick, M. D., a physician licensed to practice in Massachusetts. He is the medical director of the center operated by Parents Aid. He claims to represent all physicians in Massachusetts who, without parental consent, see minor patients seeking abortions. *Ibid.*

The defendants in the action, who are the appellants in No. 75–73 (and who are hereinafter referred to as the appellants), are the Attorney General of Massachusetts, and the District Attorneys of all the counties in the Commonwealth.

Appellant in No. 75–109 (hereinafter referred to as the intervenor-appellant) is Jane Hunerwadel, a resident and citizen of Massachusetts, and parent of an unmarried minor female of childbearing age. Hunerwadel was permitted by the District Court to intervene as a defendant on behalf of herself and all others similarly situated.[8] App. 24.

On November 13, appellants filed a "Motion to dismiss and/or for summary judgment," arguing, *inter alia,* that the District Court "should abstain from deciding any issue in this case." *Id.,* at 23. In their memorandum to the court in support of that motion, appellants, in addition to other arguments, urged that § 12P, particularly in view of its judicial-review provision, "was

---

[8] Also permitted to intervene as defendants were Kathleen Roth and others, parents situated similarly to Hunerwadel, and Jane Doe, an anonymous parent of a pregnant unmarried minor. The District Court dismissed all the intervenors except Hunerwadel for failure to adduce facts necessary to show standing. 393 F. Supp., at 850. Technically, these dismissed intervenors, who have not appealed, might well be classified as appellees under our Rule 10 (4). Their status, however, does not affect the disposition of these cases.

susceptible of a construction by state courts that would avoid or modify any alleged federal constitutional question." Record Doc. 5, p. 12. They cited *Railroad Comm'n* v. *Pullman Co.*, 312 U. S. 496 (1941), and *Lake Carriers' Assn.* v. *MacMullan*, 406 U. S. 498, 510–511 (1972), for the proposition that where an unconstrued state statute is susceptible of a constitutional construction, a federal court should abstain from deciding a constitutional challenge to the statute until a definitive state construction has been obtained.

The District Court held hearings on the motion for a preliminary injunction; these were later merged into the trial on the merits. It received testimony from various experts and from parties to the case, including Mary Moe I. On April 28, 1975, the three-judge District Court, by a divided vote, handed down a decision holding § 12P unconstitutional and void. 393 F. Supp. 847. An order was entered declaring § 12P "and such other portions of the chapter [112] insofar as they make specific reference thereto" void, and enjoining the defendants from enforcing them. App. 45–46; Jurisdictional Statement in No. 75–73, pp. A–33, A–34.

The majority held, *inter alia*, that appellees Mary Moe I, Doctor Zupnick, and Parents Aid had standing to challenge the operation of the statute, individually and as representatives of their proposed classes, 393 F. Supp., at 850–852,[9] and that the intervenor-appellant had standing to represent the interests of parents of unmarried minor women of childbearing age, *id.*, at 849–850. It found that "a substantial number of females under the age of 18 are capable of forming a valid consent," and viewed the overall question as "whether the state can be per-

[9] In regard to appellee Baird, the majority stated: "In the light of the unassailable standing of other plaintiffs . . . we do not pass on the question of Baird's standing." 393 F. Supp., at 851.

mitted to restrain the free exercise of that consent, to the extent that it has endeavored to do so." *Id.*, at 855.

In regard to the meaning of § 12P, the majority made the following comments:

"1. The statute does not purport to require simply that parents be notified and given an opportunity to communicate with the minor, her chosen physician, or others. We mention this obvious fact because of the persistence of defendants and intervenor in arguing that the legislature could properly enact such a statute. Whether it could is not before us, and there is no reason for our considering it.

"2. The statute does not exclude those capable of forming an intelligent consent, but applies to all minors. The statute's provision calling for the minor's own consent recognizes that at least some minors can consent, but the minor's consent must be supplemented in every case, either by the consent of both parents, or by a court order.

. . . . .

"4. The statute does not purport simply to provide a check on the validity of the minor's consent and the wisdom of her decision from the standpoint of her interests alone. Rather, it recognizes and provides rights in both parents, independent of, and hence potentially at variance with, her own personal interests." 393 F. Supp., at 855.

"The dissent is seemingly of the opinion that a reviewing Superior Court Judge would consider only the interests of the minor. We find no room in the statute for so limited an interpretation." *Id.*, at 855 n. 10.

"The parents not only must be consulted, they are given a veto." *Id.*, at 856.

The majority observed that " 'neither the Four-

teenth Amendment nor the Bill of Rights is for adults alone,' In re Gault, 1967, 387 U. S. 1, 13," *ibid.*, and, accordingly, held that the State cannot control a minor's abortion in the first trimester any more than it can control that of an adult. Re-emphasizing that "the statute is cast not in terms of protecting the minor . . . but in recognizing independent rights of parents," the majority concluded that "[t]he question comes, accordingly, do parents possess, apart from right to counsel and guide, competing rights of their own?" *Ibid.*

The majority found that in the instant situation, unlike others, the parents' interests often are adverse to those of the minor and, specifically rejecting the contrary result in *Planned Parenthood of Central Missouri* v. *Danforth*, 392 F. Supp. 1362 (ED Mo. 1975), see *ante*, p. 52, concluded:

> "But even if it should be found that parents may have rights of a Constitutional dimension vis-a-vis their child that are separate from the child's, we would find that in the present area the individual rights of the minor outweigh the rights of the parents, and must be protected." 393 F. Supp., at 857.

The dissent argued that the parents of Mary Moe I, by not being informed of the action or joined as parties, "have been deprived of their legal rights without due process of law," *ibid.*, that the majority erred in refusing to appoint a guardian *ad litem* for Moe I, and that it erred in finding that she had the capacity to give a valid and informed consent to an abortion. The dissent further argued that parents possess constitutionally cognizable rights in guiding the upbringing of their children, and that the statute is a proper exercise of state power in protection of those parental rights. *Id.*, at 857–865.

Most important, however, the dissent's view of the

statute differed markedly from the interpretation adopted by the majority. The dissent stated:

"I find, therefore, no conceivable constitutional objection to legislation providing in the case of a pregnant minor an additional condition designed to make certain that she receive parental or judicial guidance and counselling before having the abortion. The requirement of consent of both parents[*] ensures that both parents will provide counselling and guidance, each according to his or her best judgment. The statute expressly provides that the parents' refusal to consent is not final. The statute expressly gives the state courts the right to make a final determination. If the state courts find that the minor is mature enough to give an informed consent to the abortion and that she has been adequately informed about the nature of an abortion and its probable consequences to her, then we must assume that the courts will enter the necessary order permitting her to exercise her constitutional right to the abortion." *Id.,* at 864.

The indicated footnote reads:

"The majority speculate concerning possible interpretations of the 'for good cause shown' language. There is also some doubt whether the statute requires consent of one or both parents. The construction of the statute is a matter of state law. If the majority believe the only constitutional infirmities arise from their interpretation of the statute, the majority should certify questions of state law to the Supreme Judicial Court of Massachusetts pursuant to Rule 3:21 of that court in order to receive a definitive interpretation of the statute." *Id.,* at 864 n. 15.

Both appellants and intervenor-appellant appealed. We noted probable jurisdiction of each appeal and set the cases for oral argument with *Planned Parenthood of Central Missouri* v. *Danforth, ante,* p. 52, and its companion cross-appeal. 423 U. S. 982 (1975).

## III

Appellants and intervenor-appellant attack the District Court's majority decision on a number of grounds. They argue, *inter alia,* and each in their or her own way, that § 12P properly preserves the primacy of the family unit by reinforcing the role of parents in fundamental decisions affecting family members; that the District Court erred in failing to join Moe I's parents; that it abused its discretion by failing to appoint a guardian *ad litem;* and that it erred in finding the statute facially invalid when it was capable of a construction that would withstand constitutional analysis.

The interpretation placed on the statute by appellants in this Court is of some importance and merits attention, for they are the officials charged with enforcement of the statute.[10]

[10] It is not entirely clear that appellants suggested the same interpretation in the District Court as they suggest here. See 393 F. Supp., at 855. Nevertheless, the fact that the full arguments in favor of abstention may not have been asserted in the District Court does not bar this Court's consideration of the issue. Cf. *Wisconsin* v. *Constantineau,* 400 U. S. 433, 437 (1971).

The practice of abstention is equitable in nature, see *Railroad Comm'n* v. *Pullman Co.,* 312 U. S. 496, 500–501 (1941), and it would not be improper to consider the effect of delay caused by the State's failure to suggest or seek a constitutional interpretation. Cf. *Baggett* v. *Bullitt,* 377 U. S. 360, 379 (1964). In the instant case, however, there has been no injury to appellees' rights due to the delay (if any) in the appellants' coming forward with the interpretation they now espouse. As a result of the various orders of the District Court, the challenged portion of the statute has

Appellants assert, first, that under the statute parental consent may not be refused on the basis of concerns exclusively of the parent. Indeed, "the 'competing' parental right consists exclusively of the right to assess independently, for their minor child, what will serve that child's best interest. . . . [I]n operation, the parents' actual deliberation must range no further than would that of a pregnant adult making her own abortion decision." Brief for Appellants 23. And the superior court's review will ensure that parental objection based upon other considerations will not operate to bar the minor's abortion. *Id.*, at 22–23. See also Brief for Intervenor-Appellant 26.

Second, appellants argue that the last paragraph of § 12P [11] preserves the "mature minor" rule in Massachusetts, under which a child determined by a court to be capable of giving informed consent will be allowed to do so. Appellants argue that under this rule a pregnant minor could file a complaint in superior court seeking authorization for an abortion, and, "[i]mportantly, such a complaint could be filed *regardless* of whether the parents had been consulted or had withheld their consent." Brief for Appellants 37–38 (emphasis in original); Tr. of Oral Arg. 17. Appellants and the intervenor-appellant assert that the procedure employed would be struc-

---

never gone into effect. Nor can we adopt the view that once a request for abstention is made, it is beyond the power of the District Court to consider possible interpretations that have not been put forth by the parties. Indeed, it would appear that abstention may be raised by the court *sua sponte*. See *Railroad Comm'n* v. *Pullman Co., supra.* Cf. *England* v. *Medical Examiners,* 375 U. S. 411, 413 (1964).

[11] "Nothing in this section shall be construed as abolishing or limiting any common law rights of any other person or persons relative to consent to the performance of an abortion for purposes of any civil action or any injunctive relief under section twelve R."

tured so as to be speedy and nonburdensome, and would ensure anonymity. Brief for Appellants 38 n. 30; Brief for Intervenor-Appellant 26; Tr. of Oral Arg. 24–26.

Finally, appellants argue that under § 12P, a judge of the superior court may permit an abortion without parental consent for a minor incapable of rendering informed consent, provided that there is "good cause shown." Brief for Appellants 38. "Good cause" includes a showing that the abortion is in the minor's best interests. *Id.*, at 39.

The picture thus painted by the respective appellants is of a statute that prefers parental consultation and consent, but that permits a mature minor capable of giving informed consent to obtain, without undue burden, an order permitting the abortion without parental consultation, and, further, permits even a minor incapable of giving informed consent to obtain an order without parental consultation where there is a showing that the abortion would be in her best interests. The statute, as thus read, would be fundamentally different from a statute that creates a "parental veto." [12]

Appellees, however, on their part, take an entirely different view of the statute. They argue that the stat-

---

[12] See generally *Planned Parenthood of Missouri* v. *Danforth, ante,* p. 52; *Poe* v. *Gerstein,* 517 F. 2d 787 (CA5 1975), appeal docketed, No. 75–713; *Jackson* v. *Guste,* Civ. Action No. 74–2425 (ED La. Jan. 26, 1976); *Doe* v. *Zimmerman,* 405 F. Supp. 534 (MD Pa. 1975); *Doe* v. *Exon,* Civ. Action No. CV 75–L–146 (Neb. Oct. 8, 1975); *Planned Parenthood Assn.* v. *Fitzpatrick,* 401 F. Supp. 554 (ED Pa. 1975); *Foe* v. *Vanderhoof,* 389 F. Supp. 947 (Colo. 1975); *Gary-Northwest Indiana Women's Services* v. *Bowen,* Civ. Action No. H–74–289 (ND Ind. Jan. 3, 1975); *Wolfe* v. *Schroering,* 388 F. Supp. 631 (WD Ky. 1974); *State* v. *Koome,* 84 Wash. 2d 901, 530 P. 2d 260 (1975).

ute creates a right to a parental veto,[13] that it creates an irrebuttable presumption that a minor is incapable of informed consent,[14] and that the statute does not permit abortion without parental consent in the case of a mature minor or, in the case of a minor incapable of giving consent, where the parents are irrationally opposed to abortion.[15]

Appellees specifically object to abstention. Their objection is based upon their opinion that "the statute gives to parents of minors an unbridled veto," Brief for Appellees 49, and that once that veto is exercised, the minor has the burden of proving to the superior court judge that "good cause" exists. *Ibid.* They view the "good cause" hearing as forcing the judge to choose "between the privacy rights of the young woman and the rights of the parents as established by the statute." *Ibid.* Assuming that "good cause" has a broader meaning, appellees argue that the hearing itself makes the statute unconstitutional, because of the burden it imposes and the delay it entails. *Ibid.*

## IV

In deciding this case, we need go no further than the claim that the District Court should have abstained pending construction of the statute by the Massachusetts courts. As we have held on numerous occasions, ab-

---

[13] "[The statute can] force a pregnant sixteen year old to become a seventeen year old mother because her own mother wants a grandchild." Brief for Appellees 33.

[14] "[T]he parental consent statute constitutes a legislative decree that no person under age 18 is competent to consent to an abortion. This contravenes the line of decisions which have struck down certain irrebutable presumptions as violative of due process." *Id.,* at 42.

[15] "The statute has no exception for mature minors, or other minors with immature, emotionally upset parents." *Id.,* at 46.

stention is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary "which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem." *Harrison* v. *NAACP,* 360 U. S. 167, 177 (1959). See also *Colorado River Cons. Dist.* v. *United States,* 424 U. S. 800, 813–814 (1976); *Carey* v. *Sugar,* 425 U. S. 73, 78–79 (1976); *Kusper* v. *Pontikes,* 414 U. S. 51, 54–55 (1973); *Lake Carriers' Assn.* v. *MacMullan,* 406 U. S., at 510–511; *Zwickler* v. *Koota,* 389 U. S. 241, 249 (1967); *Railroad Comm'n* v. *Pullman Co.,* 312 U. S. 496 (1941).

We do not accept appellees' assertion that the Supreme Judicial Court of Massachusetts inevitably will interpret the statute so as to create a "parental veto," require the superior court to act other than in the best interests of the minor, or impose undue burdens upon a minor capable of giving an informed consent.

In *Planned Parenthood of Central Missouri* v. *Danforth,* we today struck down a statute that created a parental veto. *Ante,* at 72–75. At the same time, however, we held that a requirement of written consent on the part of a pregnant adult is not unconstitutional unless it unduly burdens the right to seek an abortion. In this case, we are concerned with a statute directed toward minors, as to whom there are unquestionably greater risks of inability to give an informed consent. Without holding that a requirement of a court hearing would not unduly burden the rights of a mature adult, cf. *Doe* v. *Rampton,* 366 F. Supp. 189 (Utah 1973), we think it clear that in the instant litigation adoption of appellants' interpretation would "at least materially change the nature of the problem" that appellants claim is presented. *Harrison* v. *NAACP,* 360 U. S., at 177.

Whether the Supreme Judicial Court will so interpret

the statute, or whether it will interpret the statute to require consideration of factors not mentioned above, impose burdens more serious than those suggested, or create some unanticipated interference with the doctor-patient relationship, we cannot now determine.[16]  Nor need we determine what factors are impermissible or at what point review of consent and good cause in the case of a minor becomes unduly burdensome.  It is sufficient that the statute is susceptible of the interpretation offered by appellants, and we so find, and that such an interpretation would avoid or substantially modify the federal constitutional challenge to the statute, as it clearly would.  Indeed, in the absence of an authoritative construction, it is impossible to define precisely the constitutional question presented.

Appellees also raise, however, a claim of impermissible distinction between the consent procedures applicable to minors in the area of abortion, and the consent required in regard to other medical procedures.  This issue has come to the fore through the advent of a Massachusetts statute, enacted subsequent to the decision of the District Court, dealing with consent by minors to medical procedures other than abortion and sterilization.[17]  As

---

[16] As stated in n. 6, *supra,* the challenged portion of the statute has never gone into effect.  The heated debate among the parties over the meaning of the statute is a strong indication of the ambiguities it contains.  We assume that the Supreme Judicial Court will do everything in its power to interpret the Act in conformity with its title: "An Act to protect . . . within present constitutional limits." See *Boehning* v. *Indiana State Employees Assn.,* 423 U. S. 6 (1975).

[17] Prior to the enactment of that statute, the consent procedure in regard to abortion, at least as interpreted by appellants, was arguably merely a codification of the common law.  See Brief for Appellants 24–39.  The new legislation, Mass. Acts and Resolves 1975, c. 564, approved Aug. 28, 1975, reads:

"Chapter 112 of the General Laws is hereby amended by striking

we hold today in *Planned Parenthood,* however, not all distinction between abortion and other procedures is forbidden. *Ante,* at 80–81. The constitutionality of such

---

out section 12F, as amended by section 1 of chapter 335 of the acts of 1971, and inserting in place thereof the following section:

"Section 12F.

"No physician, dentist or hospital shall be held liable for damages for failure to obtain consent of a parent, legal guardian, or other person having custody or control of a minor child, or of the spouse of a patient, to emergency examination and treatment, including blood transfusions, when delay in treatment will endanger the life, limb, or mental well-being of the patient.

"Any minor may give consent to his medical or dental care at the time such care is sought if (*i*) he is married, widowed, divorced; or (*ii*) he is the parent of a child, in which case he may also give consent to medical or dental care of the child; or (*iii*) he is a member of any of the armed forces; or (*iv*) she is pregnant or believes herself to be pregnant; or (*v*) he is living separate and apart from his parent or legal guardian, and is managing his own financial affairs; or (*vi*) he reasonably believes himself to be suffering from or to have come in contact with any disease defined as dangerous to the public health pursuant to section six of chapter one hundred and eleven; provided, however, that such minor may only consent to care which relates to the diagnosis or treatment of such disease.

"Consent shall not be granted under subparagraphs (*ii*) through (*vi*), inclusive, for abortion or sterilization.

"Consent given under this section shall not be subject to later disaffirmance because of minority. The consent of the parent or legal guardian shall not be required to authorize such care and, notwithstanding any other provisions of law, such parent or legal guardian shall not be liable for the payment for any care rendered pursuant to this section unless such parent or legal guardian has expressly agreed to pay for such care.

"No physician or dentist, nor any hospital, clinic or infirmary shall be liable, civilly and criminally, for not obtaining the consent of the parent or legal guardian to render medical or dental care to a minor, if, at the time such care was rendered, such person or facility: (*i*) relied in good faith upon the representations of such minor that he is legally able to consent to such treatment under this section; or

distinction will depend upon its degree and the justification for it. The constitutional issue cannot now be defined, however, for the degree of distinction between the consent procedure for abortions and the consent procedures for other medical procedures cannot be established until the nature of the consent required for abortions is established. In these circumstances, the federal court should stay its hand to the same extent as in a challenge directly to the burdens created by the statute.

Finally, we note that the Supreme Judicial Court of Massachusetts has adopted a Rule of Court under which an issue of interpretation of Massachusetts law may be certified directly to that court for prompt resolution. Mass. Rules of Court, Sup. Jud. Ct. Rule 3:21 (1976). This Court often has remarked that the equitable practice of abstention is limited by considerations of " 'the delay and expense to which application of the abstention doctrine inevitably gives rise.' " *Lake Carriers' Assn.* v. *MacMullan,* 406 U. S., at 509, quoting *England* v. *Medical Examiners,* 375 U. S. 411, 418 (1964). See *Kusper* v. *Pontikes,* 414 U. S., at 54. As we have also noted, however, the availability of an adequate certification procedure [18] "does, of course, in the long run save time,

---

(*ii*) relied in good faith upon the representations of such minor that he is over eighteen years of age.

"All information and records kept in connection with the medical or dental care of a minor who consents thereto in accordance with this section shall be confidential between the minor and the physician or dentist, and shall not be released except upon the written consent of the minor or a proper judicial order. When the physician or dentist attending a minor reasonably believes the condition of said minor to be so serious that his life or limb is endangered, the physician or dentist shall notify the parents, legal guardian or foster parents of said condition and shall inform the minor of said notification."

[18] There is no indication that the Massachusetts certification procedure is inadequate. Indeed, the dissent in the District Court

energy, and resources and helps build a cooperative judicial federalism." *Lehman Brothers* v. *Schein,* 416 U. S. 386, 391 (1974). This Court has utilized certification procedures in the past, as have courts of appeals. *Ibid.* and cases cited therein at 390 nn. 5 and 6.

The importance of speed in resolution of the instant litigation is manifest. Each day the statute is in effect, irretrievable events, with substantial personal consequences, occur. Although we do not mean to intimate that abstention would be improper in this case were certification not possible, the availability of certification greatly simplifies the analysis. Further, in light of our disapproval of a "parental veto" today in *Planned Parenthood,* we must assume that the lower Massachusetts courts, if called upon to enforce the statute pending interpretation by the Supreme Judicial Court, will not impose this most serious barrier. Insofar as the issue thus ceases to become one of total denial of access and becomes one rather of relative burden, the cost of abstention is reduced and the desirability of that equitable remedy accordingly increased.

## V

We therefore hold that the District Court should have certified to the Supreme Judicial Court of Massachusetts appropriate questions concerning the meaning of § 12P and the procedure it imposes. In regard to the claim of impermissible discrimination due to the 1975 statute, a claim not raised in the District Court but subject to inquiry through an amended complaint, or perhaps by other means, we believe that it would not be inappropriate for the District Court, when any procedural re-

---

cited a prior case in which the procedure was employed with no apparent difficulty. 393 F. Supp., at 864 n. 15, citing *Hendrickson* v. *Sears,* 495 F. 2d 513 (CA1 1974).

quirement has been complied with, also to certify a question concerning the meaning of the new statute, and the extent to which its procedures differ from the procedures that must be followed under § 12P.

The judgment of the District Court is vacated, and the cases are remanded to that court for proceedings consistent with this opinion.

*It is so ordered.*