REQUESTED BY: Dear Senator:
You have requested the opinion of this office concerning the constitutionality of sections 42, 48, 49 and 50 as they originally appear in L.B. 38. In addition, you have asked whether proposed amendments which you have enclosed are in conformity with the Constitution.
Sections 42, 48, 49 and 50 as they originally appear in L.B. 38 are as follows:
 "Sec. 42. Every physician consulted about abortion by an expectant mother shall inform her of agencies and services available to assist her to carry the pregnancy to natural term, and shall further inform the expectant mother as to all reasonably possible medical and mental consequences resulting from the performance of an abortion.
". . . .
 "Sec. 48. No abortion shall be performed or prescribed on any minor child in the State of Nebraska without her written consent and the consent of the parent or guardian of such minor child.
 "Sec. 49. No abortion shall be performed or prescribed on any woman, except when necessary to preserve the woman from an imminent peril that substantially endangers her life or health, who has not previously submitted to the physician in attendance a written statement by the father of the unborn human life, if the father is known, affirming his consent to the performance of the abortion. If the father is unknown, the woman requesting the abortion shall so affirm in writing to the physician in attendance.
 "Sec. 50. The performance or prescribing of an abortion without the consent required in section 48 or 49 of this act is a Class I misdemeanor."
Section 42 essentially requires the physician consulted to inform the expectant mother of available alternatives to abortion and of possible medical and mental consequences of an abortion. The United States Supreme Court in the casePlanned Parenthood of Central Missouri v. Danforth,
___ U.S. ___, 49 L.Ed.2d 788, 96 S.Ct. 2831 (1976), dealt in part with a similar, though less restrictive, statutory requirement of the State of Missouri. Missouri required that in order for an abortion to be performed before the end of the first twelve weeks of pregnancy, the woman must certify in writing her consent and that her consent is informed and freely given. The statute, however, did not specify of what she must be informed before her consent would be considered `informed'. The Court recognized that the state does have a valid interest in insuring that the woman's decision to abort is made only with full knowledge of its nature and consequences, even during the first stage of pregnancy which the Court had earlier held in Roe v. Wade, 410 U.S. 113
(1973), could not be regulated by the state. The Court inDanforth held that:
 ". . . The woman is the one primarily concerned, and her awareness of the decision and its significance may be assured, constitutionally, by the State to the extent of requiring her prior written consent." Id., p. 803.
Section 42, although broader because it specifies that the woman must be informed by her physician of alternatives and consequences, also serves the valid state interest of insuring that the decision is made with full knowledge of its nature and consequences. Although it certainly is not clearly constitutional since it involves somewhat more state regulation than the Missouri statute, we believe the constitutionality of section 42 could be upheld since it does promote a recognized state interest and does not, we believe, present an undue burden upon the decision to be made by the woman and her physician.
Section 48 prohibits any abortion to be performed upon a minor without her written consent as well as the parent or guardian of the minor. Requiring parental consent for the performance of an abortion on a minor was expressly held unconstitutional in Danforth, supra, as well as in Doe v.Exon, 75-L-146 (D.Neb. 1976), involving section 28-4, 151, R.R.S. 1943, which is identical to section 48. We can therefore say with a degree of certainty that section 48 could not be constitutionally defended.
Section 49 prohibits any abortion to be performed unless the woman has first submitted to the physician a certificate of consent of the father, if known, or a certificate of the woman that the father is unknown. Requiring spousal consent for the performance of an abortion was expressly held unconstitutional in Danforth supra. We therefore can again say with some degree of certainty that section 49, wherein the consent of the father of the unborn is required, could not be successfully defended against constitutional attack.
The proposed amendment which you provided to this office concerning section 42 strikes `all' from line 10, page 27, and adds the following at the end of section 42:
 "The expectant mother shall certify in writing that she has been so informed, and the written certification shall be signed by the expectant mother and by her attending physician and shall be sent to the Bureau of Vital Statistics, Department of Health, as an attachment to the abortion reporting form required under section 59 of this act. The written certification shall be in the following form:
 "I, ________ have been informed that the following agencies and services are among those available in Nebraska to assist me to carry my pregnancy to natural term: Birthright, and Emergency Pregnancy Service.
 "I have also been informed of all the reasonably possible medical and mental consequences resulting from an abortion.
"Date ________
Signed ________
Signed ________
Attending Physician"
Essentially, the amendment merely requires the expectant mother to certify that she has been informed of what the prior portion of section 42 requires, and that the certification be made a portion of the permanent record of the attending physician. We believe the same reasoning as used for the original section 42 applies herein. However it is our opinion that section 42 does contain another significant constitutional question which renders at least the specified wording of the certificate constitutionally suspect. The certificate requires the woman to certify that she has been advised of services offered by Birthright and Emergency Pregnancy Service, apparently referring to Birthright, Inc., and Emergency Pregnancy Services of Omaha, Inc., both private, nonprofit corporations. It is our opinion that specifying a woman must be informed of these particular private, nonprofit corporations before being allowed an abortion is constitutionally questionable as granting those corporations `special or exclusive privileges, immunity, or franchise' contrary to Article III, Section 18 of the Constitution. A constitutional problem may also be encountered with ArticleXIII, Section 3 of the Nebraska Constitution in this same regard.
The proposed amendment you have enclosed would alter section 48 in the following respects: (1) it would prohibit all abortions on a minor child 16 years of age or younger without the written consent of the parent or guardian; (2) it would prohibit abortions to be performed upon any minor without a certification in writing by the expectant mother that she has consulted with her parent or guardian concerning the performance of an abortion; and (3) it would require the attending physician to retain said written statements as part of his permanent record. As was noted above,Danforth held that granting a minor's parents veto power over their minor daughter's abortion decision was unconstitutional. However, the Missouri statute with which they were dealing prohibited abortions without parental consent for unmarried minors under the age of 18. However, the Supreme Court reserved the following question:
 "We emphasize that our holding that § 3(4) is invalid does not suggest that every minor, regardless of age or maturity, may give effective consent for termination of her pregnancy. See Bellotti v. Baird, ___ U.S. ___, 49 L Ed 2d 844, 96 S.Ct. ___ The fault with 3(4) is that it imposes a special consent provision, exercisable by a person other than the woman and her physician, as a prerequisite to a minor's termination of her pregnancy and does so without a sufficient justification for the restriction. It violates the strictures of Roe and Doe." Id., p. 808.
Essentially, reading Danforth together with Bellotti v.Baird, ___ U.S. ___, 49 L.Ed.2d 844, 96 S.Ct. ___ (1976), it appears that the Supreme Court is saying that it is impermissible for the state to create an irrebuttable presumption that a girl 18 years or younger is incapable of giving an informed consent. However they have specifically left open the question concerning whether the state may create a rebuttable presumption. The amendment you have prepared creates an irrebuttable presumption that a girl 16 years or younger is incapable of informed consent. Although it is probably true that at some point to declining age, it is permissible for the state to create such an irrebuttable presumption, we cannot predict what age would be determined permissible. Therefore we can only conclude that creating that irrebuttable presumption at the age of 16 raises a substantial constitutional question and it is questionable whether it could be defended.
The proposed amendment to section 48 also requires that a minor, e.g. an unmarried person under the age of 19 (section38-101, R.R.S. 1943), must certify that she has consulted with her parent or guardian before she may obtain an abortion. This does not constitute a parental `veto power' as did the statute found unconstitutional in Danforth.
The question is therefore whether the state has sufficient justification for such a requirement. In our opinion, the constitutionality of the provision requiring parental consultation could be successfully defended against constitutional attack. In the Danforth case, Justices White, Rehnquist, Stevens and Chief Justice Burger dissented from the decision of the majority holding the parental consent provisions unconstitutional. In the dissenting opinions thereon, it is made quite clear that those four Justices would hold that a state may constitutionally require parental consent or consultation. Justices Stewart and Powell, in their concurring opinion, state as follows:
 ". . . I think it clear that its primary constitutional deficiency lies in its imposition of an absolute limitation on the minor's right to obtain an abortion. . . ."
 "There can be little doubt that the State furthers a constitutionally permissible end by encouraging an unmarried pregnant minor to seek the help and advice of her parents in making the very important decision whether or not to bear a child. . . ." Id., p. 817.
It therefore appears that although they feel the absolute limitation posed by the Missouri consent statute is unconstitutional, a provision requiring only parental consultation would pass constitutional muster as promoting a valid state interest without being unduly burdensome on the individual rights of the unmarried pregnant minor.
Finally, section 49 would be altered by the proposed amendment by requiring consultation with the father of the unborn fetus, as opposed to requiring his consent. As mentioned above, the Supreme Court in Danforth struck down the Missouri law which required the consent of the spouse. It should be noted that in the sections we are dealing with herein, the consultation requirement is with the father of the unborn fetus as opposed to the spouse of the woman. Therefore, somewhat different interests may be involved. The state interest considered in Danforth was that of preserving and promoting the marital relationship as well as the presumed father's interest in the growth and development of the fetus being carried. Nebraska, in requiring consultation with the father, would not necessarily be protecting an existing marital relationship, since the father is not necessarily married to the mother, and there is no presumption that they would be married. However, the state would at least be protecting and promoting a potential marital relationship.
Although the constitutionality of the proposed amendment is certainly questionable, it is our opinion that the constitutionality of the requirement of consultation with the father could probably be successfully defended. Requiring consultation with the father does not grant to the father a `veto power' such as that condemned in Danforth.
Since the father has a recognized constitutional interest (see Stanley v. Illinois, 405 U.S. 645, 31 L.Ed.2d 551,92 S.Ct. 1208), which must be weighed against the interests of the mother, we believe it could successfully be argued that requiring a mere certification of consultation, as opposed to consent, does not represent an arbitrary or unreasonable accommodation of the individual rights involved.
If you have any further questions or desire any clarification, please do not hesitate to contact this office, as we realize that the questions concerning what the state may do concerning the regulation of abortions is a very complicated one, and many questions remain unanswered by PlannedParenthood v. Danforth, supra.