The **GRIFFIN HOSPITAL,**
Plaintiff-Appellant,

v.

The **COMMISSION ON HOSPITALS AND HEALTH CARE,** Gardner Wright, Jr., Michael Fierri, and Nancy Watters, **Defendants-Appellees.**

No. 780, Docket 85–9031.

United States Court of Appeals, Second Circuit.

Argued Jan. 16, 1986.

Decided Jan. 21, 1986.

---

Jeffrey B. Sienkiewicz, Danbury, Conn. (Pinney, Payne, Van Lenten, Burrell, Wolfe & Dillman, P.C., A. Searle Pinney, of counsel), for plaintiff-appellant.

Thomas J. Ring, Asst. Atty. Gen., Hartford, Conn. (Joseph I. Lieberman, Atty. Gen., Richard J. Lynch, Asst. Atty. Gen., of counsel), for defendants-appellees.

Marshall R. Collins, Hartford, Conn., for amicus curiae Connecticut Business and Industry Ass'n.

Before KAUFMAN and CARDAMONE, Circuit Judges, and WYZANSKI, District Judge.*

IRVING R. KAUFMAN, Circuit Judge:

Determined to combat the rising tide of medical costs, the Connecticut legislature in 1984 enacted a comprehensive hospital regulatory scheme. Conn.Gen.Stat. §§ 19a–164 to 19a–165q. Pursuant to this plan, the Connecticut Commission on Hospitals and Health Care (the "Commission") is empowered to impose ceilings on the gross revenues of hospitals. The Griffin Hospital, a non-profit acute care facility, falls within the Commission's regulatory ambit. On September 17, 1985, the agency issued a rate order for fiscal year 1986 to Griffin. The Commission's directive, which was formulated without a prior hearing, commanded the hospital to lower its revenues and rates.

Refusing to abide by the Commission's decision, the hospital filed a complaint in the United States District Court for the District of Connecticut on October 4, 1985. Griffin presented two constitutional claims. Objecting to the absence of a hearing, Griffin argued the Commission's procedures violated the due process clause of the fourteenth amendment. The hospital also contended that the federal Medicare Prospective Payment System, 42 U.S.C. § 1395ww, preempted Connecticut's statutory regime. Therefore, the rate order, and the administrative system on which it was based, allegedly violated the supremacy clause.

On November 12, 1985, Chief Judge Daly entered an order staying proceedings in the district court and directing Griffin to seek state administrative and judicial remedies. The district judge based his ruling on the doctrine of abstention enunciated in *Railroad Commission v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).[1] The hospital thereupon moved this Court to stay Judge Daly's order and to grant an injunction pending appeal restraining the Commission from enforcing its rate order. The motion was denied on December 4, 1985, and this expedited appeal followed.

In examining the district court's stay, we are mindful of the ambiguous contribution the *Pullman* abstention doctrine has made to our legal system. The precepts of *Pullman* apply when a state statute can be interpreted in a way that obviates a constitutional attack made in federal court. Through abstention, state courts have the first opportunity to construe the disputed provision. A more authoritative interpretation is accordingly obtained and an unnecessary constitutional ruling possibly averted.

Although intellectually attractive, *Pullman* abstention places heavy burdens on plaintiffs, who traditionally must com-

---

* The Honorable Charles E. Wyzanski, Senior District Judge for the District of Massachusetts, sitting by designation.

1. The district court arguably based its order on *Burford* abstention as well. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). When the *Burford* branch of ab-

stention is invoked, however, the proper course for the district court is to dismiss, not stay, the action. Accordingly, we presume Judge Daly bottomed his ruling on either *Pullman* abstention or a general reluctance to decide important issues of state law.

mence or continue separate proceedings in state court. At best, a suit becomes more costly and its disposition is delayed. At worst, abstention transforms our dual court system into a jurisprudential labyrinth from which even the hardiest litigant is unlikely to emerge. *See, e.g., England v. Louisiana State Board of Medical Examiners,* 384 U.S. 885, 86 S.Ct. 1924, 16 L.Ed.2d 998 (1966) (per curiam) (abstention spawned three lawsuits over a nine year period).

These difficulties, however, can be ameliorated by use of certification of state law questions to a state's hightest court where this procedure is available. By employing this procedure, a federal court can obtain definitive and speedier answers to the quandaries prompting it to abstain. Indeed, the United States Supreme Court has granted its imprimatur to certification in this context. *Bellotti v. Baird,* 428 U.S. 132, 151, 96 S.Ct. 2857, 2868, 49 L.Ed.2d 844 (1976); *see also* Field, *The Abstention Doctrine Today,* 125 U.Pa.L.Rev. 590, 605–09 (1977).

Felicitously, Connecticut has recently adopted a certification procedure. Connecticut Public Act No. 85–111. At oral argument, we apprised counsel of the existence of this new statute. We also believe the district court should have considered this procedure. Accordingly, we vacate the order staying proceedings and remand the case to the district court with instructions to certify any necessary state law questions to the Connecticut Supreme Court.

Of course, we express no view on the merits of Griffin's constitutional claims. Because the issue was neither considered by Judge Daly nor briefed by the appellant, we also do not rule on the necessity of abstention pursuant to *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

Accordingly, the order of the district court is vacated and the cause remanded for proceedings consistent with this opinion.