**L. COHEN & COMPANY, INC.**

v.

**DUN & BRADSTREET, INC.**

Civ. No. H 85–686(JAC).

United States District Court, D. Connecticut.

Feb. 7, 1986.

**1420**

John Andrew Kissel, Enfield, Conn., for plaintiff.

Eric Lukingbeal, Hartford, Conn., for defendant.

## RULING ON MOTION FOR CERTIFICATION

JOSÉ A. CABRANES, District Judge:

This matter is before the court on the plaintiff's motion to certify two questions of state law to the Supreme Court of Connecticut pursuant to Connecticut Public Act 85–111 ("the Act").[1] The questions are (1)

---

**1.** Public Act 85–111 provides, in pertinent part, that

[t]he [Connecticut] supreme court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States or a United

States District Court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there

Does a credit report constitute a "product" under the Connecticut Product Liability Act, C.G.S. § 52–572m *et seq.?* and (2) Does Connecticut Public Act 84–468, which eliminated the need to demonstrate a "nexus with the public interest" in order to prevail in an action under the Connecticut Unfair Trade Practices Act, C.G.S. § 42–110a *et seq.,* apply retroactively? The motion for certification is opposed by the defendant.

The Supreme Court recognized in *Lehman Brothers v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974), that the use of certification procedures such as those provided by the Act is not obligatory but "rests in the sound discretion of the federal courts." It is therefore appropriate for a federal judge sitting in Connecticut to consider the prudential guidelines that ought to inform the use of the new certification procedures.

## I.

The search for such guidelines must begin with an examination of the abstention doctrine developed over the past 50 years by the United States Supreme Court. The Court has frequently recognized that

> "[t]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."

*Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), *quoting County of Allegheny v. Frank Mashuda Company,* 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1062–1063, 3 L.Ed.2d 1163 (1959). It has been emphasized that to deny a litigant the opportunity to raise issues of state law in a federal diversity

action "merely because the answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court of the state, would thwart the purpose of the jurisdictional act." *Meredith v. Winter Haven,* 320 U.S. 228, 234–235, 64 S.Ct. 7, 10–11, 88 L.Ed. 9 (1943).

The "exceptional circumstances" in which a federal district court may properly "decline to exercise or postpone the exercise of its jurisdiction" have been carefully limited by a series of Supreme Court decisions. *See, e.g., Colorado River Water Conservation District v. United States, supra,* 424 U.S. at 814–816, 96 S.Ct. at 1244–1246; *County of Allegheny v. Frank Mashuda Company, supra,* 360 U.S. at 189–190, 79 S.Ct. at 1063–1064. For example, abstention may be appropriate where a state court's determination of pertinent state law could moot a federal constitutional question, *see, e.g., Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), or where the exercise of jurisdiction by the federal court would disrupt on-going state criminal prosecutions and related activities, *see, e.g., Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), or unnecessarily interfere with a state regulatory scheme. *See, e.g., Burford v. Sun Oil Company,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

The Supreme Court has emphasized that the abstention doctrine must be limited to such "exceptional circumstances" in order to prevent the "added delay and expense" that may result when litigants are shuttled from one courthouse to another and sometimes back again. *County of Allegheny v. Frank Mashuda Company, supra,* 360 U.S. at 196, 79 S.Ct. at 1067. As the Court has observed,

> [i]t exacts a severe penalty from citizens for their attempt to exercise rights of access to the federal courts granted them by Congress to deny them "that promptness of decision which in all judi-

is no controlling precedent in the decisions of the supreme court of this state.

cial actions is one of the elements of justice."
*Id.* at 196–197, 79 S.Ct. at 1067–1068, *quoting Forsyth v. Hammond,* 166 U.S. 506, 513, 17 S.Ct. 665, 668, 41 L.Ed. 1095 (1897). Our Court of Appeals has likewise recognized that "[a]t best, a suit becomes more costly and its disposition is delayed" as a result of abstention, while "[a]t worst, abstention transforms our dual court system into a jurisprudential labyrinth from which even the hardiest litigant is unlikely to emerge." *Griffin Hospital v. Commission on Hospitals,* 782 F.2d 24, 26 (2d Cir.1986) (Kaufman, J.).

## II.

It has been widely noted that certification offers federal courts a means of obtaining definitive interpretations of state law that entails fewer costs and delays than does abstention. *See, e.g., Bellotti v. Baird,* 428 U.S. 132, 150–151, 96 S.Ct. 2857, 2867–2868, 49 L.Ed.2d 844 (1976); *Griffin Hospital v. Commission on Hospitals, supra,* 782 F.2d at 26. As a result, the conditions necessary for certification are more flexible and more discretionary than the conditions necessary for abstention. *See Fiat Motors v. Mayor and Council of Wilmington,* 619 F.Supp. 29, 33 (D.Del. 1985) (Wright, J.), *comparing Louisiana Power & Light Co. v. Thibodaux,* 360 U.S. 25, 27 n. 2, 79 S.Ct. 1070, 1072 n. 2, 3 L.Ed.2d 1058 (1959) (approving a federal district court's stay of its own proceedings to permit the parties to seek a definitive interpretation of state law from the state courts) *with County of Allegheny v. Frank Mashuda Company, supra,* 360 U.S. at 188–189, 79 S.Ct. at 1062–1063 (disapproving district court's use of abstention).

However, "[w]hile certification may engender less delay and create fewer additional expenses for litigants than would abstention, it entails more delay and expense than would an ordinary decision of the state question on the merits by the federal court." *Lehman Brothers v. Schein, supra,* 416 U.S. at 394, 94 S.Ct. at 1746 (Rehnquist, J., concurring). *See also*

*Clay v. Sun Insurance Office,* 363 U.S. 207, 224–227, 80 S.Ct. 1222, 1232–1234, 4 L.Ed.2d 1170 (1960) (Black, J., dissenting) (criticizing certification on the ground that "[l]itigants have a right to have their lawsuits decided without unreasonable and unnecessary delay or expense"); *American Fidelity Bank & Trust Company v. Heimann,* 683 F.2d 999, 1022 (6th Cir.1982) (recognizing "the inevitable delay inherent in the certification process"). Accordingly, courts and commentators have recognized that "the costs to the litigants [and] the burden of judicial review imposed on a state's highest court[ ] militate[ ] against liberal recourse to certification." *Fiat Motors v. Mayor and Council of Wilmington, supra,* 619 F.Supp. at 34. *See also* 1A (Part 2) J. Moore, *Moore's Federal Practice* ¶ 0.203[5] (1985) (observing that "[d]ue regard for the interests of the states in conserving their judicial resources requires that the district courts be careful in their use of certification procedures").

The burden on the litigants and the state judiciary may be particularly great where, as here, the certification process is available not only to the United States Supreme Court and the federal courts of appeals but also to any federal district court that is presented with an unsettled question of Connecticut law. Almost one-quarter of all civil cases filed in the federal district courts each year are predicated on diversity of citizenship, *see* Annual Report of the Director of the Administrative Office of the U.S. Courts (1986) (noting that in the year ended June 30, 1985, of the 273,670 civil cases commenced in district courts, 61,101 were based on diversity), and many of the remaining cases raise pendent state claims or otherwise require a determination of state law. Only rarely has the precise issue of state law presented in these cases been previously decided by the highest court of that state.

Consequently, a federal district court in Connecticut must annually decide scores of questions of state law that have never reached the Connecticut Supreme Court. Issues of Connecticut law must also be

decided, from time to time, by other federal trial and appellate courts. It would impose an unreasonable and unnecessary burden on the Connecticut Supreme Court if the certification process were to be invoked routinely whenever a federal court was presented with an unsettled question of Connecticut law.[2]

■■■ Instead, the federal courts ought to resort to certification only when doing so would, in the context of the particular case, "save time, energy and resources and help[ ] build a cooperative judicial federalism." *Lehman Brothers v. Schein, supra,* 416 U.S. at 391, 94 S.Ct. at 1744. The decision whether to invoke the certification process is therefore best left, at least in most circumstances, to "the sound discretion" of the individual federal judge. *See id.* at 393, 94 S.Ct. at 1745 (Rehnquist, J., concurring) ("a sensible respect for the experience and competence of the various integral parts of the federal judicial system suggests that we go slowly in telling the courts of appeals or the district courts how to go about deciding cases where federal jurisdiction is based on diversity of citizenship, cases which they see and decide far more often than we do"); *In re Puerto Rico Electric Power Authority,* 687 F.2d 501, 504 (1st Cir.1982) ("[t]he district court is closer than we are to the local law and is also better able to weigh such possible adverse factors flowing from certification as delay, expense and so forth").

■■■ Accordingly, certification, like abstention, may appropriately be invoked to avoid the premature decision of federal constitutional claims, *see, e.g., Bellotti v. Baird, supra; Clay v. Sun Insurance Office, supra; Griffin Hospital v. Commis-*

*sion on Hospitals, supra,* or the unnecessary disruption of state governmental functions, *see, e.g., Louisiana Power & Light Co. v. Thibodaux, supra; Fiat Motors v. Mayor and Council of Wilmington, supra.* In addition, the federal judge might appropriately consider the following factors in deciding whether to certify a particular issue to the state supreme court:

(1) The extent to which the issue sought to be certified has truly been left unsettled by the state courts, *see State of Florida ex rel. Shevin v. Exxon Corporation,* 526 F.2d 266, 274–275 (5th Cir.1976), *cert. denied,* 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976) ("the closeness of the question" is one of the "most important" factors in "determining whether to exercise our discretion in favor of certification");

(2) The availability of resources—such as statutory and case law, regulations, legislative histories and agency decisions—that would assist the judge in resolving the issue, *see Lehman Brothers v. Schein, supra,* 416 U.S. at 395, 94 S.Ct. at 1746 (Rehnquist, J., concurring) ("[i]f a district court or court of appeals believes that it can resolve an issue of state law with available research materials already at hand, and makes the effort to do so, its determination should not be disturbed simply because the certification procedure existed but was not used"); *State of Florida ex rel. Shevin v. Exxon Corporation, supra,* 526 F.2d at 274–275 (one of the "most important" factors in deciding whether to certify a question is "the existence of sufficient sources of state law ... to allow a principled rather than conjectural conclusion");

2. Chief Justice Ellen A. Peters of the Connecticut Supreme Court recently noted with respect to the workload of the state judiciary that

our caseload in absolute terms remains unmanageably large. Even though reduced [from some recent years], the number of new cases filed in the Superior Court each year approximates 700,000.... We risk drowning in the sheer magnitude of these numbers.

Address by Chief Justice Peters to the General Assembly (Jan. 9, 1985). The court takes judicial notice of the fact that the impact of an

"unmanageably large" caseload is felt not only by the trial courts but also by the higher courts to which many of those cases will eventually be appealed. The interests of comity and federalism would hardly be served if the certification of questions to the Supreme Court of Connecticut were to become so widespread as to impair further the ability of the state judiciary to fulfill its obligation under Article I, Section 10, of the Connecticut Constitution to administer justice "without ... delay."

(3) The judge's own familiarity with the relevant state law, *see Lehman Brothers v. Schein, supra,* 416 U.S. at 391, 94 S.Ct. at 1744 (certification was particularly appropriate where a question of Florida law was presented to federal judges in New York who "lack[ed] the common exposure to local law which comes from sitting in the jurisdiction");

(4) The age and urgency of the litigation in which the issue is presented as well as the potential prejudice to the litigants that may result from the costs and delays associated with certification, *see,* 1A *Moore's Federal Practice, supra,* ¶ 0.203[5] ("from the perspective of the federal system the earlier certification is used the more efficient the procedure is");

(5) The frequency with which the particular legal issue is likely to recur in future litigation, *see State of Florida ex rel. Shevin v. Exxon Corporation, supra,* 526 F.2d at 275 n. 29; *Fiat Motors v. Mayor and Council of Wilmington, supra,* 619 F.Supp. at 34, and the extent to which a decision on that issue would affect the rights of persons not before the court; and

(6) The other demands on the judge's own docket and the docket of the state judiciary, *see* 1A *Moore's Federal Practice, supra,* ¶ 0.203[5] ("the district courts should be sensitive to the fact that certification does increase the workloads of the state courts"), and the likelihood that a decision on the certified question could be obtained expeditiously from the state supreme court.

The views of the litigants as to whether a particular issue warrants certification ought to be accorded substantial but not decisive weight by the federal judge.

In sum, the proper approach to be adopted by a federal court in deciding whether to certify a given question to a state supreme court was succinctly stated by the Court of Appeals in *Barnes v. Atlantic and Pacific Life Insurance Company,* 514 F.2d 704, 705 n. 4 (5th Cir.1975): "[W]e use much judgment, restraint and discretion in certifying. We do not abdicate." *See also Ormsbee Development Company v. Grace,* 668 F.2d 1140, 1149 (10th Cir.), *cert. denied,* 459 U.S. 838, 103 S.Ct. 84, 74 L.Ed.2d 79 (1982) (certification "is to be utilized with restraint and distinction"); *State of Florida ex rel. Shevin v. Exxon Corporation, supra,* 526 F.2d at 274 ("certification should never be automatic or unthinking").[3]

### III.

This court holds that the instant case does not present sufficiently "exceptional circumstances" to justify the time and expense inherent in the certification procedure. The plaintiff has failed to establish that the questions sought to be certified are particularly inappropriate for resolution by the federal courts. For example, this action does not seek unnecessarily to interfere with the activities of state officials or to disrupt a comprehensive state regulatory scheme.

A federal district court sitting in Connecticut is not without resources to decide the routine questions of statutory construction that the plaintiff seeks to certify to the Connecticut Supreme Court. For example, the court has ready access to the various

---

**3.** A different analysis is not suggested by the decision of our Court of Appeals in *Griffin Hospital v. Commission on Hospitals, supra.* In that case, the district judge had already deemed it appropriate for the federal court to stay its hand pending the outcome of state administrative and judicial proceedings; the Court of Appeals merely indicated that the district judge ought to have achieved this result by certification rather than by the more time-consuming process of abstention. Moreover, *Griffin Hospital v. Commission on Hospitals* was an action against a state agency and state officials alleging that a newly enacted "comprehensive hospital regulatory scheme," *id.,* at 25, violated the Supremacy Clause of the United States Constitution. Accordingly, the case appears to have presented one of those unusual questions that are particularly inappropriate for resolution by the federal courts for the reasons noted in Part II, *supra.* In any event, *Griffin Hospital v. Commission on Hospitals* cannot be read as an open-ended invitation to the district courts to certify indiscriminately all arguably unsettled issues of Connecticut law.

reported decisions of the Connecticut Supreme Court and the state lower courts construing the Connecticut Unfair Trade Practices Act and the Connecticut Product Liability Act. The court also has access to the decisions of other courts construing similar state and federal statutes. The parties to this litigation are represented by competent Connecticut counsel who can be relied upon to bring other relevant legislative and administrative materials to the court's attention.

Furthermore, the issues sought to be certified are unlikely to recur with great frequency in future litigation. The question concerning the retroactivity of Public Act 84–468 affects only those alleged violations of the Connecticut Unfair Trade Practices Act that occurred prior to June 8, 1984, *see* C.G.S. § 42–110g(a), while the question of the applicability of product liability law to credit reports apparently has never been raised in any other court and therefore is unlikely to be litigated repeatedly in Connecticut.

Finally, a comparison of court dockets suggests that the interests of both parties in the expeditious resolution of this litigation can best be served by denying the motion for certification.

 It is true that the First Amendment to the United States Constitution may be implicated in some of the defenses raised by the defendant. However, the mere possibility that a federal constitutional issue might be mooted by a particular interpretation of state law cannot, without more, require a federal district court to stay a lawsuit in which the constitutionality of a state statute has not been challenged and other independent claims are simultaneously being pressed for decision.

■ The federal courts can best serve the important interests of comity, federalism and judicial economy underlying the Act by exercising the "judgment, restraint and discretion" to certify only those unusual questions that are particularly suitable for resolution by the Connecticut Supreme Court. As for the vast majority of cases coming before the federal courts that raise unsettled issues of state law, "[a]ll we can do is to exercise our best judgment, and conscientiously to perform our duty." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 403, 5 L.Ed. 257 (1821) (Marshall, C.J.).

*Conclusion*

For the reasons stated above, the plaintiff's motion for certification is denied. It is so ordered.