175 N.J. Super. 526 (1980)
420 A.2d 1029
TOWER MARINE, INC., PLAINTIFF,
v.
CITY OF NEW BRUNSWICK, A MUNICIPAL CORPORATION, ROBERT KANE, INDIVIDUALLY AND AS CITY ENGINEER, AND BESS WEISENFELD, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Middlesex County.
Decided August 5, 1980.
*528 Donald R. Taggart, Sr. for plaintiff (Taggart & Taggart, attorneys).
Joel N. Werbel for defendants (Methfessel & Werbel, attorneys).
FURMAN, J.S.C.
At issue on motion for judgment notwithstanding the verdict, R. 4:40-2, is whether the governmental-proprietary distinction in municipal tort liability survives the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. That issue is critical because the amended complaint joining the City of New Brunswick as party defendant was filed two years and eight days after the accrual of the claim for damage to plaintiff's boat basin and boat yard. If the Tort Claims Act is applicable the two-year statute of limitations in N.J.S.A. 59:8-8 is a bar. Otherwise, the ten-year period of limitation in N.J.S.A. 2A:14-1.1 or the six-year period of limitation in N.J.S.A. 2A:14-1 governs. Timely notice of plaintiff's claim was presented to defendant city in conformity with N.J.S.A. 59:8-8.
Because of an injunction count the action was transferred from the Law Division to the Chancery Division, R. 4:3-1(a)(2). The tort cause of action against defendant city was for negligence or trespass in opening the sluice gate of Weston's Mill dam upstream from plaintiff's boat basin and boat yard on Lawrence Brook, without notice or warning to plaintiff. Lawrence Brook is a tributary of the Raritan River; plaintiff's marina is near their confluence. The injunction count was resolved by a consent order providing for at least three hours' notice by defendant city to plaintiff prior to opening the sluice gate of the dam in the future.
Defendant city owns and maintains Weston's Mill dam and two other upstream dams by a water department financed through its own revenues. The water department supplies defendant city's water supply and the water supplies of other *529 nearby municipalities from Weston's Mill pond and elsewhere along Lawrence Brook. Weston's Mill dam was built around 1888.
Unquestionably, under the governmental-proprietary distinction prevailing prior to the Tort Claims Act municipal operation of a water utility is a proprietary function. Fay v. Trenton, 126 N.J.L. 52 (E. & A. 1941). The effect of the distinction has been recognized to be that a municipality is liable for "simple negligence" in a proprietary activity, Cloyes v. Delaware Tp., 23 N.J. 324 (1957), but for "active wrongdoing" only in a governmental activity, Milstrey v. Hackensack, 6 N.J. 400, 408 (1951).
On July 20, 1975 a rainstorm of a magnitude predictable once in a hundred years struck the area, including the Lawrence Brook watershed. According to a United States Geodetic Survey measurement at Farrington Lake dam four miles upstream from Weston's Mill pond, the discharge rate reached 4,922 cubic feet a second, 60% higher than the highest previous measurement during Hurricane Doria in 1971.
The peak overflow over the spillway on Weston's Mill dam was calculated at 3,880 cubic feet a second. Plaintiff's marina, about 7,000 feet downstream on a peninsula reaching into the brook, was exposed to a rush of water. The depth of Lawrence Brook stayed almost level without flooding of the banks. In the early morning hours of July 21 George Searle, plaintiff's principal owner, became aware of the increased velocity of Lawrence Brook and was almost continuously at the marina thereafter through the day.
At about ten in the morning, with heavy, drenching rain still falling and surface water run-off adding increasingly to the volume in Lawrence Brook because of saturation of the watershed, defendant Kane, city engineer of defendant city, determined to protect the dam against the unprecedented velocity in the brook. The sluice gate was opened at about half past eleven. Little damage had occurred at plaintiff's marina until that time.
At noon Lawrence Brook surged into plaintiff's marina with a further increase in velocity and turbulence. Two engineering *530 experts attributed this surge to the opening of the sluice gate. Boats broke loose, pilings and docks were twisted and washed away. The most severe wreckage was in the moorings in the main channel on the upstream side of the peninsula.
Credible testimony was adduced that the prevailing practice is for municipal water utilities to provide warning to downstream owners upon a change in a dam affecting the downstream flow; that there was an interval of an hour and a half within which to do so, and that plaintiff could have reduced the amount of damage at the marina, particularly by removing boats from the exposed main channel, if on notice an hour and a half before the impending opening of the sluice gate.
According to several witnesses, part of the east bank of Weston's Mill dam was eroded into a water course several feet wide, contributing to the volume and velocity downstream in Lawrence Brook. But there was a lack of proof of any proximate cause relationship between this eroded water course and damage occurring at plaintiff's marina. Cf. N.J.S.A. 59:4-2.
In reaching a verdict of tort liability in favor of plaintiff, this court concluded that, even assuming defendant city's operation of the water utility to be proprietary, it was guilty of negligence under respondeat superior in opening the sluice gate without notice or warning to plaintiff as a downstream proprietor.
No separate proof was offered against defendant Kane, who held no office within the water department. Accordingly, he was not required to present individual defenses, if any. A dismissal on motion was granted in favor of defendant Weisenfeld. The verdict of tort liability was rendered only against defendant city.
Assuming that the Tort Claims Act governs, the verdict would not be different except for the bar of the two-year statute of limitations. Defendant city is a public entity within the act's definition. Its liability extends under N.J.S.A. 59:2-2 to damage proximately caused by acts or omissions of its employee within the scope of his employment "in the same manner and to the same extent as a private individual under like circumstances." The exception for discretionary activities in N.J.S.A. *531 59:2-3 is arguably applicable to City Engineer Kane's determination to open the sluice gate to protect Weston's Mill dam, but not to the omission to notify or to warn plaintiff of the impending release of an increased volume of water.
Public and private owners of dams have been adjudicated liable in tort to downstream proprietors for opening dams or otherwise increasing the downstream flow. A duty of reasonable care is owed by them to downstream proprietors, within which should be encompassed a duty to provide reasonably adequate notice or warning except in an emergency. 91 A.L.R.3d 1065 (1979); Rylands v. Fletcher, L.R., 3 H.L. 330 (1868); Paolicelli v. Wojciechowski, 132 N.J. Super. 274 (App.Div. 1975), certif. den. 68 N.J. 152 (1975).
To resolve the disputed issue the legislative intent of the Tort Claims Act must be explored. The act purports to circumscribe all governmental tort liability. N.J.S.A. 59:1-2, 59:2-1; English v. Newark Housing Auth., 138 N.J. Super. 425, 428, 429 (App.Div. 1976). As stated in McGowan v. Eatontown, 151 N.J. Super. 440 (App.Div. 1977):
... [P]ublic entities are only liable for negligence within the limitations of the [Tort Claims Act]; there is no liability except as provided by the act. [at 446]
Plaintiff is urging that common law liability persists, apart from the Tort Claims Act, wherever the public entity is engaged in, as here, an activity previously recognized as proprietary. Negligence, not active wrongdoing, remains the test, according to plaintiff.
The only significant consequence, if plaintiff's argument prevails, would be an exemption from the statute of limitations within the Tort Claims Act. The determination of negligence under N.J.S.A. 59:2-2 would be identical to the determination of common law negligence in the exercise of a proprietary activity.
Even prior to the enactment of the Tort Claims Act the governmental-proprietary distinction in tort litigation against municipalities tended to be discredited. In upholding a right of action in negligence for damages from a fire starting on municipally-owned piers, the Supreme Court in B.W.King, Inc. v. West New York, 49 N.J. 318 (1967) stated:

*532 We can find no logical reason why the municipality should not be subject to the same duties and liabilities in relation to surrounding properties as are incurred by individuals in the ownership of realty, whether the capacity in which title to the real estate held by the municipality is denominated proprietary or governmental. [at 326]
Since the enactment of the Tort Claims Act the Supreme Court, in K.S.B. Tech. Sales v. North Jersey Dist. Water Supply, 75 N.J. 272 (1977), rejected the governmental-proprietary distinction in holding that a district water supply commission is a governmental agency acting in furtherance of a governmental purpose in distributing water for sale at cost within eight municipalities. The consequence of this holding is that the commission is exempt from an international trade treaty governing commercial sales, to which the United States is a party.
The California Tort Claims Act, Cal.Gov't Code § 810 et seq., enacted in 1963, was the model for the Tort Claims Act. See Report of the Attorney General Task Force on Sovereign Immunity (1972). In Slapin v. Los Angeles Intern. Airport, 65 Cal. App.3d 484, 487, 135 Cal. Rptr. 296, 298 (D.Ct.App. 1976), the court referred to the abolition of the governmental-proprietary distinction by the "statutory scheme," although not express within the act.
The New Jersey Tort Claims Act is likewise silent concerning any governmental-proprietary distinction. Plaintiff relies upon the comment to N.J.S.A. 59:1-3, drawn from the Attorney General's report, that
The definition of "Public Entity" provided in this section is intended to be all inclusive and to apply uniformly throughout the State of New Jersey to all entities exercising governmental functions.
The reference to "governmental functions," according to plaintiff, corroborates a legislative intent to preserve the governmental-proprietary distinction and to exclude litigation against a municipality acting in a proprietary capacity from the Tort Claims Act, despite its declaration in N.J.S.A. 59:1-2 that "public entities shall only be liable for their negligence within the limitations of this act."
An alternative and more tenable view of what was meant by the comment on "governmental functions" is to accord that *533 language with the Supreme Court's comment in Washington Tp. v. Ridgewood, 26 N.J. 578, 584 (1958): "... [W]hatever local government is authorized to do constitutes a function of government ..."
Plaintiff's argument is repugnant to the broad codifying purpose of the Tort Claims Act. Substantively it is illusory because of the identical scope of liability, whether arising out of negligence in a proprietary activity at common law or an act or omission within N.J.S.A. 59:2-2, except for the bar of the two-year statute of limitations under the act. The governmental-proprietary distinction is no longer controlling; rather, the statutory test is whether an act or omission is ministerial or discretionary, N.J.S.A. 59:2-3. Survival of the governmental-proprietary distinction solely to sanction a claim beyond the two-year period of limitations would be in conflict with the intent and sweep of the Tort Claims Act. Plaintiff's argument cannot be sustained.
Judgment notwithstanding the verdict of tort liability is granted in favor of defendant City of New Brunswick.