**FIAT MOTORS OF NORTH AMERICA, INC. and Affiliated FM Insurance Company, Plaintiffs,**

v.

**MAYOR AND COUNCIL OF the CITY OF WILMINGTON; Department of Commerce of the City of Wilmington; Board of Harbor Commissioners of the Port of Wilmington; E.I. du Pont de Nemours & Company and American Auto, Inc., Defendants.**

Civ. A. No. 82–691 CMW.

United States District Court, D. Delaware.

Feb. 27, 1985.

J.R. Julian, Wilmington, Del., for plaintiffs; Henry J. Catenacci, Podvey, Sachs & Catenacci, Newark, N.J., of counsel.

David E. Brand, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendants Mayor and Council of Wilmington, Dept. of Commerce of the City of Wilmington, Bd. of Harbor Com'rs of the Port of Wilmington.

Paul M. Lukoff and Catherine B. Hagerty, Wilmington, Del., for defendant E.I. du Pont de Nemours & Co.

Peter M. Sieglaff, Esquire of Potter, Anderson & Corroon, Wilmington, Del., for defendant American Auto, Inc.

## MEMORANDUM OPINION

CALEB M. WRIGHT, Senior District Judge.

Fiat Motors of North America, Inc. (hereinafter "Fiat") and Fiat's insurance carrier, Affiliated FM Insurance Co. (hereinafter "Affiliated") have brought suit against the Mayor and Council of the City of Wilmington, Department of Commerce of the City of Wilmington, and the Board of Harbor Commissioners of the Port of Wilmington (collectively referred to hereinafter as "City of Wilmington"), E.I. du Pont de Nemours & Co. (hereinafter "Du Pont"), and American Auto, Inc. (hereinafter "American"), claiming that these parties are liable for flood damages to Fiat's automobiles caused by the defendants' allegedly negligent acts or omissions. Presently before the Court is defendant City of Wilmington's Motion for Summary Judgment.[1] The City of Wilmington asserts that it is immune from tort liability under the County and Municipal Tort Claims Act, 10 *Del.C.* §§ 4010–4013 (hereinafter "Tort Claims Act"). Although the City has raised other defenses,[2] the assertion of sovereign immunity would represent a complete bar to plaintiffs' tort claims against the City of Wilmington.

At oral argument, the Court raised *sua sponte* the issue of certifying questions of state law to the Delaware Supreme Court under a modification of that Court's rules which was made possible by a recent amendment to the state constitution.[3] Although federal courts in other jurisdictions have had experience in certifying questions

---

1. American and Du Pont each filed motions for summary judgment that were granted in part and denied in part in an Opinion and Order dated August 24, 1984.

2. The defense of sovereign immunity is only one of the issues raised in the City of Wilmington's Motion for Summary Judgment. For now, it is sufficient to note that the plaintiffs have asserted other causes of action sounding in contract and the defendants have asserted defenses based on exculpatory clauses contained in the lease.

3. Delaware amended its Constitution to permit the Delaware Supreme Court "to hear and determine questions of law certified to it" by Delaware's federal district court "where it appears to the Supreme Court that there are important and urgent reasons for an immediate determination of such questions." Del. Const. Art. IV, § 11(9). The Delaware Supreme Court acted upon this expansion of its discretionary jurisdiction to provide for certification by the United States District Court of Delaware. Del.Supr. Ct.R. 41(a). Although the federal district court may certify questions of law to Delaware's highest court, questions so certified will be accepted for review only if they meet the requirements set forth in Del.Supr.Ct.R. 41(b).

This case was filed prior to enactment of the constitutional amendment and the subsequent modification of the Supreme Court rules. The Court feels, however, that the status of this case as pending prior to enactment does not preclude certification. Consideration of certification at this stage of the proceeding will not force the Court to reconsider any issues already decided, nor does consideration pose any issue of prejudice or unfairness to the parties. *But cf., Federal Deposit Insurance Corp. v. Blue Rock Shopping Center, Inc.,* 599 F.Supp. 684 (D.Del.1984) (holding, on remand, that certification is unavailable in a case when enactment of state

of law to state's highest court, certification for the District Court of Delaware, applying Delaware law, represents a novel and as yet, untested procedure. For this reason, this Court must carefully assay the standards governing certification of questions of state law in diversity proceedings to determine whether certification is appropriate in this case.

BACKGROUND

Fiat is engaged in importing and selling motor vehicles in the United States. On January 6, 1974, Fiat entered into an agreement to lease approximately 30 acres of property at the Wilmington Marine Terminal from the Board of Harbor Commissioners of the Department of Commerce of the City of Wilmington. Fiat leased this property to provide the company with facilities for the processing, servicing and storage of its imported automobiles prior to their shipment to Fiat dealers. The annual rent to be paid by Fiat to Wilmington was approximately $193,000 plus annual adjustments based upon the wholesale price index. In addition, Fiat was obligated to pay dockage and wharfage charges assessed by Wilmington and to guarantee generation of a minimum of $75,000 per lease year in dockage and wharfage assessments by the City. Fiat renewed the lease on March 29, 1979.

The other defendants in this lawsuit, Du Pont and American, entered into separate agreements with Fiat independent of Fiat's lease with the City. American, a wholly-owned subsidiary of Pasha Industries, Inc., was required to process, service and store Fiat's automobiles at the Wilmington Terminal Facility under a contract between Pasha and Fiat entered into in June of 1979. Du Pont leased part of its parking lot at its nearby Christiana Laboratories to Fiat beginning in the summer of 1980 to handle Fiat's cars when the number of cars shipped to Wilmington exceeded Fiat's storage capacity at the Port of Wilmington.

On October 25, 1980, a severe rain storm caused the Christina River to overflow and flood the Port of Wilmington facilities and the Du Pont parking lot. At the time of the flood, several thousand Fiat automobiles were parked at the Port of Wilmington and the Du Pont lot. The flood caused over $10 million in damages to those automobiles.

Fiat subsequently filed a flood loss claim with the company's insurance carrier, Affiliated. Affiliated paid Fiat approximately $9.2 million on the claim. As a result of deductibles under Fiat's insurance policy, approximately $1 million in flood losses were not covered by the policy.

On October 22, 1982, Fiat instituted suit against American, Du Pont and various municipal bodies of the City of Wilmington.[4] Affiliated, as a subrogee to Fiat's claims, joined with Fiat as a plaintiff in this suit. The City of Wilmington admits to having one million dollars in insurance coverage for any tort liability on its part arising from Fiat's property damages.

DISCUSSION

On a motion for summary judgment, a court determines whether the moving party is entitled to judgment as a matter of law after drawing all inferences from the existing record in a light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); Fed.R.Civ.P. 56(c). The initial burden of demonstrating the absence of any genuine issue as to a material fact rests on the moving party, and until the moving party discharges his burden, the non-moving party may rely solely on his allegations taken from the pleadings. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

Here, plaintiffs, the non-moving parties, have alleged negligence on the part of the

---

court's enabling rules followed district court's entry of final judgment).

**4.** In connection with the foregoing events, a state court action was also brought. Defendants

Du Pont and American moved to stay the state court proceedings and their motion was granted on May 3, 1983 in the Superior Court of the State of Delaware by Judge Bifferato.

City. The City does not seek to challenge this allegation through its motion and so the Court, assumes, for purposes of the defendant City's motion, that the City was in fact negligent. The City contends, however, that regardless of whether it was negligent, it is immune from liability under the Tort Claims Act, 10 *Del.C.* §§ 4010–4013. The plaintiffs contest the City of Wilmington's claim of immunity on two grounds. First, it is argued that the City in leasing parking facilities was acting in a proprietary capacity. Prior to enactment of the Tort Claims Act, a municipality's proprietary activities were beyond the scope of any immunity enjoyed by a municipality. Plaintiffs argue that this rule of law was unaffected by passage of the Tort Claims Act. Alternatively, plaintiffs claim that the City of Wilmington, in purchasing liability insurance for activities beyond the scope of the activities enumerated in 10 *Del.C.* § 4012, waived any statutory immunity under 10 *Del.C.* § 4011.

## I. CERTIFICATION BY A FEDERAL COURT

This Court sits in exercise of its diversity jurisdiction. As such, the Court, although providing a federal forum, must apply the substantive law of the appropriate state jurisdiction as expressed in that state's statutes and the decisions of its state's highest court. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).[5] While *Erie* established the source of law for federal courts' decisions in diversity cases, knowing the proper source of law does not guarantee that it can be ascertained with complete certainty. Federal courts in applying state law frequently encounter instances in which state law is not readily accessible because the state's highest court has not recently addressed a particular question of law. *See Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.,* 626 F.2d 280, 284 (3d Cir.1980).

■ "In the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how the court would rule." *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1167 (3d Cir. 1981). Accurate forecasts of the decisions of a state's highest court must begin with an examination of the best available evidence. Evidence of state law comes in many forms: lower state court precedents, related decisions and considered dicta of a state's highest court, the policies that inform that court's application of certain legal doctrines, the decisions of courts in another jurisdiction and even legal treatises and articles. *See McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662–63 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980); *Brown v. Caterpillar Tractor Co.,* 696 F.2d 246, 250 (3d Cir.1982). The decisions of state trial courts are not to be regarded by federal courts as conclusive evidence of what the state's highest court would hold, although state trial court decisions should be accorded some weight. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 464, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). Under some conditions, federal authority may not be bound even by intermediate state appellate court rulings, *id.,* especially when such rulings bear certain indicia of unreliability. *See National Surety Corp. v. Midland Bank,* 551 F.2d 21, 32 (3d Cir.1977). The purpose of these prudential rules for ascertaining state law is not to afford federal courts unfettered discretion in deciding issues of state law, but to assure that litigants in a diversity action are not penalized by being deprived of the same flexibility that a state court could reasonably expect to show, *Becker v. Interstate Properties,* 569 F.2d 1203 (3d Cir.1977), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978), when the federal court is, in effect, sitting as a state court. *Commissioner v. Estate of Bosch,* 387 U.S. at 465, 87 S.Ct. at 1783.

■ Regardless of how difficult an issue of state law may be, federal courts

---

5. In this case, both parties agree that the case is controlled by Delaware law.

cannot relinquish federal jurisdiction and send the parties to a state forum for an answer. Diversity juridiction is simply not discretionary. Congress imposed an unqualified obligation on federal courts to decide issues of state law when parties of diverse citizenship seek a federal forum without regard to the difficulty of the state law issues presented. *See Meredith v. City of Winter Haven,* 320 U.S. 228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943). Only in the face of exceptional public policy considerations is a federal court ever warranted in declining to exercise congressionally conferred jurisdiction. *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), *(quoting County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)).

Certification of questions of law to a state's highest court is a relatively recent procedural innovation by states that permits a federal court to obtain an authoritative ruling on unsettled questions of state law without recourse to prediction and without abdicating its obligation to provide a federal forum to parties who have properly invoked federal jurisdiction. The Supreme Court has expressed approval for federal courts' discretionary use of certification in diversity cases in which there is difficulty in ascertaining state law. *Lehman Brothers v. Schein,* 416 U.S. 386, 390–91, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974).[6]

Given that a federal district court possesses the discretion to certify difficult questions of state law when such a procedure is available and given that such a procedure is available in Delaware, this Court must determine whether that discretion should be exercised with respect to the questions of law presented in this case. The Supreme Court has never indicated the necessary conditions before a court can resort to certification. In a superficial sense, the certification decision resembles one to abstain. At the very least it would seem that any benefits of certification in providing an authoritative interpretation of state law should be balanced against those costs to litigants that the procedure shares with other procedural devices such as abstention. The most important of these costs is the delay encountered by litigants in obtaining an adjudication of their claims.[7]

Certification, however, is very different from abstention in one important respect. Unlike abstention when solely issues of state law are present, certification merely stays the exercise of jurisdiction while abstention divests the court of jurisdiction. In view of this major difference, the Supreme Court has understandably indicated that the requisite conditions for certification are far less onerous than the conditions which would justify abstention in a diversity case. *Compare Louisiana Power & Light Co. v. Thibodaux,* 360 U.S. 25, 27 n. 2, 79 S.Ct. 1070, 1072 n. 2, 3 L.Ed.2d 1058 (1959) (holding that a district court properly stayed proceedings pending a determination by the state's highest court of an uncertain question of state law regarding the scope of a municipality's power of eminent domain, *with County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959) (district court improperly abstained

---

**6.** The Supreme Court has approved of certification in a broad array of cases other than those cases involving diversity jurisdiction. None is more significant than obtaining a definitive interpretation of state law when "a federal constitutional question might be mooted thereby." *Clay v. Sun Insurance Office Ltd.,* 363 U.S. 207, 212, 80 S.Ct. 1222, 1226, 4 L.Ed.2d 1170 (1960). Indeed, in these situations, the Supreme Court has resorted to certification itself. *See, e.g., Zant v. Stephens,* 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982); *Elkins v. Moreno,* 435 U.S. 647, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978).

**7.** The Third Circuit has recognized delay and additional litigation costs to parties caused by abstention, as factors for courts to weigh in determining whether *Pullman*-type abstention is appropriate. *McKnight v. SEPTA,* 583 F.2d 1229 (3d Cir.1978). These same factors are present when a federal court certifies questions of state law to a state's highest court.

from exercising diversity jurisdiction in a state eminent domain proceedings).

■ Certainly, in the absence of uncertainty regarding state law, certification is inappropriate. *See Florida ex rel Shevin v. Exxon Corp.*, 526 F.2d 266, 274–75 (5th Cir.), *cert. denied*, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976). Whether mere doubt about state law is sufficient to merit certification is a closer question. In addition to the costs to the litigants, the burden of judicial review imposed on a state's highest court militates against liberal recourse to certification. Thus, the court in *Hatfield v. Bishop Clarkson Memorial Hospital*, 701 F.2d 1266, 1268 (8th Cir.1983) (en banc) suggested that although uncertainty was a key factor, certification may require more, such as the likely recurrence of a question of law.

■ While the minimum requirements for certification are not well-defined, certain conditions are clearly sufficient to justify its use. If a certification procedure exists, and, in the absence of such a procedure, abstention would otherwise be appropriate, then judicial recourse to certification offers a preferable course of action. *Cf. Belloti v. Baird*, 428 U.S. 132, 150–51, 96 S.Ct. 2857, 2868, 49 L.Ed.2d 844 (1976). In diversity actions, abstention is favored only if state law is unsettled and then, only if an incorrect decision will have a broad impact on state policy. *Smith v. Metropolitan Property & Liability Insurance Co.*, 629 F.2d 757, 760 (2d Cir.1980).[8] These same two conditions, uncertainty and impact, yield identifiable benchmarks with which to evaluate the propriety of certification. Although these conditions provide a stronger test for certification than is warranted, certification is clearly appropriate and possibly incumbent upon district courts when these conditions are met. If questions of state law fail to meet these conditions, then a court should proceed to consider other factors of law that may tip the balance in favor of certification. The Court will examine whether the conditions of uncertainty and impact have been met in this case.[9]

## II. UNSETTLED QUESTIONS OF STATE LAW

Prior to enactment of the Tort Claims Act, the law of sovereign immunity in Delaware was characterized by four salient features. First and most importantly, the doctrine was viewed as one of constitutional origin. Consequently, its repeal or modification could only be achieved by legislative action. *See, e.g., Shellhorn & Hill, Inc. v. State*, 55 Del. 298, 187 A.2d 71, 74 (1962) (discussing origins and implications of doctrine). *Flait v. Mayor & Council of Wilmington*, 48 Del. 89, 97 A.2d 545, 546 (1953), *overruled on other grounds, City of Wilmington v. Spencer*, 391 A.2d 199, 203 (Del.1978). Secondly, governmental entities acting in a proprietary capacity were not entitled to immunity for their tortious conduct. *See City of Wilmington v. Spencer*, 391 A.2d 199, 201 n. 1 (Del. 1978); *Wilmington Housing Authority v. Williamson*, 228 A.2d 782, 786 (Del.1967); *Flait v. Mayor & Council of Wilmington, supra*, 97 A.2d at 546 (Del.1953). This exception to the rule of sovereign immunity is not a product of specific legislative action, nor is it a result of judicial policy. The Delaware Supreme Court's assertion that sovereign immunity is subject to modification solely by legislative action is recon-

**8.** These two factors have also been identified by the Third Circuit as relevant to a court's decision to abstain under the *Pullman* doctrine. *D'Iorio v. Delaware County*, 592 F.2d 681, 685–86 (3d Cir.1978), *overruled on other grounds, Kershner v. Mazurkiewicz*, 670 F.2d 440 (3d Cir. 1982), (en banc); *Lillard v. Delaware State Hospital for the Chronically Ill*, 552 F.Supp. 711, 722 (D.Del.1982). In a case of *Pullman* abstention, presumably the level of uncertainty regarding state law and the overall impact on state policy are less than what is required in the context of abstention for diversity purposes.

**9.** This Court cannot pass on whether the questions suggested by the Court meet the requirements for accepting certified questions set forth in Del.Supr.Ct.R. 41. However, the Court notes that requirements (ii) and (iii) appear analogous to the concerns that must be addressed by a federal court before determining that certification is appropriate in a federal case.

cilable with the existence of such a limitation only if the proprietary exception is regarded as sharing the doctrine's common law origins and as being part and parcel of the common law doctrine's adoption into the state constitution.

The judicial antipathy expressed by Delaware courts toward sovereign immunity represents the third significant feature of the doctrine's development in Delaware. Delaware courts, although recognizing their inability to unilaterally repeal the doctrine, have repeatedly branded it as an unjust legal concept. *See City of Wilmington v. Spencer*, 391 A.2d 199, 201 (Del.1978); *Pajewski v. Perry*, 363 A.2d 429, 432 (Del.1976). While this judicial condemnation of sovereign immunity does not, nor was it meant to have the force of law, the Delaware Supreme Court's declarations, read in conjunction with its holdings in *Spencer* and *Pajewski*, evidence a policy of strict construction of statutory extensions of sovereign immunity.

A line of Delaware court decisions immediately preceding enactment of the Tort Claims Act establish the fourth important characteristic of Delaware's application of sovereign immunity. Beginning with *Wilmington Housing Authority v. Williamson*, 228 A.2d 782, 787 (Del.1967), the Delaware Supreme Court held that a state or municipality might waive its immunity from tort liability to which it would otherwise be entitled. The waiver concept was applied by the Delaware Supreme Court to limit sovereign immunity in two separate areas. First, "enabling" provisions, permitting a governmental entity to sue and be sued, and found in state statutes or municipal charters, were deemed general waivers of sovereign immunity. *See City of Wilmington v. Spencer*, 391 A.2d 199, 203 (1978); *Varity Builders, Inc. v. Polikoff*, 305 A.2d 618, 619 (Del.1973). Secondly, a state statute authorizing the purchase of insurance was construed as a presumptive waiver of immunity by the state which could be rebutted through a demonstration of public policy reasons for failing to insure or self-insure. *See Pajewski v. Perry*, 363 A.2d 429, 436 (Del.1976).

The Tort Claims Act was passed with the stated purpose of legislatively overturning recent decisions of the Delaware Supreme Court that had eroded the protection afforded to municipalities by sovereign immunity. 62 *Laws of Delaware*, Ch. 124 (1979). Despite its explicit intention to undo the effect of recent Delaware Supreme Court decisions, the legislature did not specify the specific decisions it found objectionable. Thus, the scope of the legislature's intended revision was never delimited with any clarity.

The literal wording of the statute's first section is of some assistance in clarifying the legislators' intent. Section 4011(a) provides:

> Except as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages. That a government entity has the power to sue or be sued, whether appearing in its charter or statutory enablement, shall not create or be interpreted as a waiver of the immunity granted in this subchapter.

The first sentence suggests the statute should be given a broad construction, providing a wholesale abandonment of all preexisting law with respect to sovereign immunity. The second sentence, in specifically singling out *Varity* and *Spencer* for legislative reversal, creates a different impression. Applying the maxim of statutory construction *expressio unius est exclusio alterius*, suggests the scope of the section's first sentence should be construed narrowly.

The fundamental problem in applying this statute to the case presently before the Court is that the Delaware Supreme Court has not had an opportunity to construe the statute's scope. The Court, in ascertaining the continued vitality of the proprietary exception to immunity and the effect of Wilmington's purchase of insurance on the City's statutory immunity, would ordinarily be obligated to predict how Delaware's highest court would decide these issues in

reaching a decision. Here, however, the Court's concern is far more limited; the only issue is whether the questions of state law presented are so uncertain that to predict in these circumstances would be an act of temerity rather than one of considered judgment.

### A. An Exception To Immunity For Proprietary Activities

Whether the Tort Claims Act eliminated the exception to sovereign immunity for proprietary activities of a municipality appears to be a question of first impression. The statute does not specifically address municipalities acting in a proprietary capacity. Thus, the Court must resort to principles of statutory constructions to ferret out the statute's meaning.

As noted above, the principle of *expressio unius est exclusio alterius* indicates that the statute modified the existing doctrine of sovereign immunity only insofar as it prohibited courts from construing "enabling" provisions as a waiver of immunity. Moreover, because the proprietary exception is a distinction that has always been regarded as inhering in sovereign immunity's common law foundations, this Court is required to construe strictly any statute purporting to eliminate the exception. *See Colonial School Board v. Colonial Affiliate, NCCEA/DSEA/NEA,* 449 A.2d 243, 248 (Del.1982); *see generally* 3 G. Sands, *Sutherland Statutory Construction* §§ 61.01–61.06 (4th ed. 1974). This principle of construction gains further support from declarations by the Delaware Supreme Court decrying the injustice of the immunity doctrine. Together, these principles suggest that municipalities are not immune when acting in a proprietary capacity.

**10.** The Court has not determined whether the municipality's ownership or construction of the facility in question, although clearly not a public building, falls within any of the exceptions enumerated in 10 *Del.C.* § 4012, nor has the issue been raised squarely by either party. Accordingly, the Court has not had an opportunity to consider whether the recent amendments to 10 *Del.C.* § 4013, *see* 64 *Laws of Delaware,* Ch. 443 (July 20, 1984), should be given effect in

■ Of course, canons of statutory construction seldom provide a conclusive basis for interpreting a statute. *See generally* K. Llewellyn, *The Common Law Tradition,* Appendix C (1960). Balanced against these canons of statutory construction, the defendant points to a decision by a New Jersey Superior Court which held that the governmental/proprietary distinction did not survive New Jersey's enactment of a statute restoring the defense of sovereign immunity. *Tower Marine, Inc. v. New Brunswick,* 175 N.J.Super. 526, 420 A.2d 1029 (1980). Although this is not entirely persuasive because of the virtual abandonment of the distinction by New Jersey courts prior to enactment of the statute, *id.* 420 A.2d at 1032, the Court feels that it is sufficient when coupled with the imprecise drafting of the statute itself, to create severe doubts as to the proper resolution of the following question:

QUESTION ONE: Does the County and Municipal Tort Claims Act, *10 Del.C.* §§ 4010–4013, render a municipality immune from liability for its negligent acts or omissions when the municipality is acting in a proprietary capacity?

### B. The Effect Of A Municipality's Purchase of Insurance

The applicability of the statutory immunity found in 10 *Del.C.* § 4011 to municipalities acting in a proprietary capacity is only one aspect of the City of Wilmington's claim of immunity in this case. In addition, the Court must consider the effect on the City of Wilmington's statutory immunity of its purchase of insurance, providing protection against liability for acts beyond the exceptions enumerated with 10 *Del.C.* § 4012.[10] Unlike the question of the con-

this case which was pending prior to enactment of the amendment either to actions against municipalities not within the scope of § 4012 or to actions against municipalities if it is subsequently determined that ownership of the Port facility is within one of the exceptions contained in § 4012. While these issues may have presented further questions of state law for certification and although the Court would welcome any guidance that the Delaware Supreme Court

tinued vitality of the proprietary exception, whether a municipality's purchase of insurance constitutes a waiver of statutory immunity is not an issue of first impression for this Court.

In *Hedrick v. Blake*, 531 F.Supp. 156, 159 (D.Del.1982), the Court held that a municipality in purchasing insurance, covering liability beyond the scope of the exceptions enumerated in 10 *Del.C.* § 4012, waived its statutory immunity for an intentional tort allegedly committed by one of its agents. The *Hedrick* decision interpreted the Tort Claims Act as specifically intended to overturn the holdings in *Varity* and *Spencer*. The Court, however, noted that although *Spencer* was no longer reliable precedent, the legislative overturning of *Spencer* was not meant to undercut the Delaware Supreme Court's earlier decision in *Pajewski*. Indeed, as the Court in *Spencer* noted, the legislature's amendment of 18 *Del.C.* § 6501 indicated legislative approval of the *Pajewski* decision. *See City of Wilmington v. Spencer*, 391 A.2d 199, 201 n. 2.

This distinction between the holding in *Spencer* and its dicta proved significant for this Court in *Hedrick*. Assuming that *Pajewski* was good law, and applying the Delaware Supreme Court's observation that for purposes of immunity, the rules applied to the state and a municipality are essentially the same, *City of Wilmington v. Spencer*, 391 A.2d 199, 201 (Del.1978), the *Hedrick* Court proceeded to reason that the same analysis used in *Pajewski* was also applicable to municipalities: the purchase of insurance by a municipality should effect a waiver just as surely as the same fact would have constituted a waiver by the State under *Pajewski*.[11] In short, the Court's holding in *Hedrick* was predicated on the theory that the Tort Claims Act did not prohibit municipalities from waiving

their statutory immunity, but merely precluded courts from inferring a waiver based on "enabling" provisions contained in state legislation or municipal charters.

This Court would follow its earlier decision save for two unpublished opinions of the Delaware Superior Court: *Wright v. New Castle County*, C.A. No. 80C–DE–96 (Del.Super., December 22, 1982); *White v. Town of Elsmere*, C.A. No. 82C–JN–36 (Del.Super.1983). Both opinions sharply criticized this Court's Opinion in *Hedrick*. Although a federal court may not disregard the unpublished decisions of state trial courts merely because it has or would reach a different result, a district court, sitting in diversity, has an obligation to determine whether such decisions accurately reflect how a state's highest court would decide an issue. In performing this task, the Third Circuit has expressly directed district courts to examine the cogency of the reasoning expressed in state trial court decisions to ascertain what weight should be given to those decisions. *See Blake v. Kline*, 612 F.2d 718, 723 (3d Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980); *National Surety Corp. v. Midland Bank*, 551 F.2d 21, 32 (3d Cir.1977).

Thus, before abandoning *Hedrick*, the Court must examine the substance of the two contrary state court decisions. Because the comments in *White* merely repeat the forceful criticism expressed in *Wright*, the Court will focus solely on the latter opinion. There, the Delaware Superior Court wrote:

> In my opinion, this reasoning [the Court's decision in *Hedrick v. Blake*, 531 F.Supp. 156 (D.Del.1982)] is faulty in two ways. First, the reference in *City of Wilmington v. Spencer*, 391 A.2d 199,

might choose to offer, the Court is reluctant to overburden the Supreme Court with issues that have not been raised squarely before this Court.

**11.** Strictly speaking, *Pajewski* did not consider the effect of the purchase of insurance by the State, but the effect of a statute authorizing the purchase of insurance. The Supreme Court held that the statute's authorization was meant

to be mandatory and thus, effected a waiver. *Pajewski v. Perry*, 363 A.2d 429, 435 (Del.1976). While the final holding in *Pajewski* is inapplicable to municipalities, the Supreme Court discussion was based on an implicit affirmation of the principle that the purchase of insurance by the State would have effected an unequivocal waiver.

201 n. 2 (1978) to the fact that the City had insurance coverage was not a holding that this was a waiver of immunity under 18 *Del.C.* § 6511, which refers to the *State* insurance program. Second, the legislative intent of maintaining sovereign immunity "except as otherwise expressly provided by statute" is plain and must be given effect. Moreover, this clear legislative intent must be given effect without regard to whether or not the function involved was governmental or discretionary.

*Wright v. New Castle County, supra,* at 2. The state court's first observation, that *Spencer* did not hold a municipality's purchase of insurance constituted a waiver of insurance, is undoubtedly true. With respect to the holding in *Hedrick,* however, it is beside the point. As explained above, in *Hedrick,* this Court relied on *Spencer* as a continued affirmation of the principles expressed in *Pajewski* regarding the effect of adopting a state insurance program on the State's sovereign immunity. *Hedrick* merely extended the legal analysis in *Pajewski* to the purchase of insurance by a municipality. Although the analysis used in *Pajewski* was not the basis of the *Spencer* Court's holding, the *Spencer* Court noted in dicta that the principles of immunity for different governmental entities were essentially equivalent. Thus, the criticism of *Hedrick* appears to be based on a misunderstanding of the Court's use of *Spencer.*

The *Wright* Court also points to the legislature's "plain" intent in enacting § 4011(a) as favoring its own interpretation. This Court is dubious of such an argument for two reasons. The "plain" intent of § 4011(a) is "plain" only if the section's second sentence is ignored. The legislature's stated intent to overturn unspecified recent Delaware Supreme Court decisions coupled with the principle of *expressio unius est exclusio alterius* militates against any inference that the first sentence precludes courts from construing the purchase of insurance as a waiver.

There is a second, more troubling, aspect to the state court's decision in *Wright.* It

fails to address the fundamental distinction found in the decisions of the Delaware Supreme Court between immunity and waiver of immunity. The Supreme Court's decisions preceding enactment of the Tort Claims Act were not based on judicial modifications to the doctrine of sovereign immunity itself, but rather focused on the conditions for concluding that immunity had been waived. The legislature responded by prohibiting courts from implying a waiver solely on the basis of "enabling" provisions.

In holding that a municipality never waives its immunity by purchasing insurance, the decision in *Wright* purported to rely on the plain intent of the legislature in redefining sovereign immunity. The *Wright* Court's approach presupposes a relationship between the scope of sovereign immunity and the capacity of governmental entities to waive their statutory immunity. The basis for asserting that such a relationship exists implicitly rests on one of two constructions of the Tort Claims Act: either § 4011(a) prohibits a municipality from ever waiving its statutory immunity, or, more narrowly, § 4011(a) provides specifically that the purchase of insurance shall not be construed as a waiver. Although either principle represents a conceivable construction of the statute, neither principle has its foundation in the statute's literal wording.

Despite the Court's misgivings regarding the reasoning employed in *Wright v. New Castle County, supra,* the Court is not entirely convinced that *Hedrick* was correctly decided. Accordingly, in light of the pervasive uncertainty regarding the proper construction of the Tort Claims Act, the Court finds that it needs guidance with respect to two additional questions of law:

QUESTION TWO: Does the County and Municipal Tort Claims Act, 10 Del.C. §§ 4010–4013, prohibit a municipality from waiving its statutory immunity?

QUESTION THREE: Does a municipality's purchase of insurance that provides the municipality with protection against liability for activities beyond the scope of

the exceptions enumerated in 10 *Del.C.* § 4012 constitute an implied waiver of the municipality's statutory immunity under 10 *Del.C.* § 4011 of the County and Municipal Tort Claims Act?

## III. IMPACT ON STATE POLICY

Mere uncertainty about state law is not always sufficient to warrant certification of questions of state law to a state's highest court. Certification is unquestionably appropriate when, as here, resolution of the particular questions of law presented will have a broad impact on state policy.

Numerous policy considerations support the conclusion that the scope of municipalities' statutory immunity under the Tort Claims Act is of profound importance to the functioning of governmental entities in Delaware. A decision by this Court could affect the financial well-being of municipalities and counties throughout Delaware. The application of different rules of law with respect to immunity by state and federal courts would subject each county and municipality to unnecessary uncertainty concerning its liability for its own tortious conduct and the desirability of purchasing liability insurance. Finally, a decision will affect the allocation of costs between taxpayers and victims for injuries caused by the negligent acts and omissions of counties and municipalities and their agents.

Any one of these considerations might suggest a sufficient impact on state policy to merit certification. Together their impact on state policy is unquestionable.

## IV. CONCLUSION

Because the Court is confronted with unsettled questions of state law whose resolution will have a major impact on state policy, the Court finds that the three questions identified in the body of this Opinion should be certified to the Supreme Court of Delaware. Accordingly, the Court will draw up a Certificate of Questions of Law and direct the Clerk of the Court to file that Certificate along with a copy of this Opinion with the Delaware Supreme Court

pursuant to the procedure set forth in Del. Supr.Ct.Rule 41(c).