132 N.J. Super. 274 (1975)
333 A.2d 532
VINCENT E. PAOLICELLI, ET AL., PLAINTIFFS-APPELLANTS,
v.
JOSEPH R. WOJCIECHOWSKI, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 17, 1974.
Decided January 15, 1975.
*277 Before Judges CARTON, CRANE and KOLE.
Messrs. Blumberg, Rosenberg, Mullen and Blackman, attorneys for appellants (Mr. William F. Mullen on the brief).
Mr. Arthur L. Alexander, attorney for respondent (Mr. Richard D. Fifield on the brief).
PER CURIAM.
Plaintiffs, by this action, sought various forms of relief against defendant, an adjoining landowner, contending that defendant's creation of a pond on his land resulted in a trespass and an unreasonable overflow of water on their land. They claim that the waters of the pond were retained by an earth embankment and resulted in the overflow, either by release from a pipe or otherwise; that in constructing the pond there was a trespass on plaintiffs' land through use of plaintiffs' top soil and other dirt to construct the embankment; that the pond constitutes a nuisance, and that it was erected in violation of the municipal ordinance since no building permit was obtained therefor. A mandatory injunction directing removal of the pond and restoration of the lands of plaintiffs and defendant to their natural state was requested. Compensatory and punitive damages were also demanded.
The trial judge denied the injunction and compensatory damages but rendered a judgment for $2,500 punitive damages. Both parties appeal.
Our review of the proofs satisfies us that the injunction was properly denied, since the remedy at law, damages, was adequate under the circumstances. Accordingly, we affirm that part of the judgment, essentially for the reasons given by the trial court. Further, as the judge held, the question of whether there was a violation of the ordinance need not be decided, for we conclude that the judge correctly determined that the harm done to plaintiffs by reason of any such violation may be compensated for adequately in damages.
*278 However, we find that the judge erred in not awarding compensatory damages and in granting punitive damages. Our consideration of the evidence and the law convinces us that his determinations in both respects were so mistaken as to create a clearly unjust result. Hence, we make our own independent findings and determinations as to these issues. Neither of them, in our view, necessarily involve matters of credibility or the trial judge's "feel" of the case. See State v. Johnson, 42 N.J. 146, 161-162 (1964); Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-484 (1974).
The judge properly found a causal relationship between the construction of the pond and the water damage to plaintiffs' land. But he erred when it found that such damage was not measurable. There was adequate evidence justifying a compensatory damage award.
We need not determine whether a cause of that damage was (1) the pipe which casts water from the pond onto plaintiffs' land; (2) the change effected by the pond's banks in the flow of water from the road so as to divert more of it to such land than before its erection, or (3) both of these factors. The court below determined that (2) was the causative element. In any event, we find that the testimony of plaintiffs' experts, Burns, Burd and Bowser, as to the extent of the damage to plaintiff's property causally related to defendant's dereliction, enables us to make a fair and reasonable estimate thereof and that substantial reliance thereon would produce a just result.
In a case such as this plaintiffs do not have the difficult burden, imposed by the court below, to show the extent to which the wet condition of their land resulted from the pond, as compared with the degree of its wetness at and beyond its boundary with defendant's land before construction of the pond.
Where, as here, it is certain that damage has resulted, mere uncertainty as to the amount will not preclude recovery. Evidence affording a basis for estimating damages *279 with some reasonable degree of certainty is sufficient to support an award of compensatory damages. Tessmar v. Grosner, 23 N.J. 193 (1957). If it is impossible to distingish between the damage arising from the actionable injury and that caused by another or natural conditions, the court should attempt to make the best estimate possible under the circumstances as a basis for the damages to be allowed. Jenkins v. Pennsylvania R.R. Co., 67 N.J.L. 331 (E. & A. 1902); Betenbaugh v. Princeton Hospital, 50 N.J. 390 (1967). See also, Dziedzic v. St. John's Cleaners & Shirt Launderers, Inc., 53 N.J. 157 (1968); Fosgate v. Corona, 66 N.J. 268 (1974); 525 Main Corp. v. Eagle Roofing Co., 34 N.J. 251 (1961). This the trial judge failed to do.
There was conflicting evidence as to the amount of damage caused by the pond. Nevertheless, there were sufficient proofs upon which to predicate a reasonable estimate and finding of compensatory damages. The judge found that defendant had committed a tort against plaintiffs' land compensable in damages. Under these circumstances plaintiffs should not be without a remedy of that kind. See Armstrong v. Francis Corp., 20 N.J. 320 (1956).
The proofs support the conclusion that plaintiffs' property fronting Bickel Road may be useable as building plots, but as a result of flooding from the pond and the resulting wetness at least one such plot has been lost. Additionally, even if this flooding condition is rectified in the manner hereafter discussed, suggested by plaintiffs' expert Burns, there will be probable future damage to plaintiffs' lands, including this plot, resulting from the erection of the pond.
Burd estimated that the lot adjacent to the pond, if buildable, would be worth at least $8,000. The marshy wetness, however, resulting from the pond devalued it to $2,000. The lot next to it, because of its proximity to the low marshy land, a breeding place for mosquitos, he said, was worth $6,000 instead of $8,000. We are satisfied that at present the claimed partial $2,000 loss of a second buildable lot is *280 not substantiated by the proofs. The evidence as to the depreciation of the first lot to $2,000 is in a sense speculative, since it requires the obtaining of a municipally approved subdivision by plaintiffs. However, the damage to plaintiffs' land is sufficiently certain so that it is reasonably clear that in no event could that lot be used for building purposes in its present state even if such approval were obtainable. Thus, Burd's estimate of damage might be serviceable as a measure thereof.
Nevertheless, under the circumstances here, we deem the more appropriate standard of damages to be the cost of substantially remedying the adverse flooding effects on plaintiff's land and restoring it to its prior condition. See 525 Main Street Corp. v. Eagle Roofing Co., supra; Berg v. Reaction Motors Div., 37 N.J. 396 (1962).
Burns suggested an alternative to removal of the pond which we find is reasonable, even though he said it would only partially rectify the adverse effects of the pond on plaintiffs' property. That involves the construction of a concrete ditch, stabilization, seeding and topsoil with regard to plaintiff's property, and certain additional work and materials to which he testified and which are set forth in a document he prepared and referred to in his testimony. That document appears as a supplement to the pretrial order. The proposed remedy does not include piping the flow of water, which would be more expensive. His estimate for this suggested means of relieving the flooding impact is $6,938, or rounded out, $7,000. We find this to be the minimum cost for the project. We further conclude that it will substantially alleviate plaintiffs' problem, provided that additional compensation is awarded them for increased costs since the September 197 3hearing date, the probable future adverse effect of the flooding on plaintiffs' land, particularly if the area further develops, and the probability that the price of the lot adjoining the pond, if subdivided, would be reduced because of its proximity to the pond and earth embankment.[1] *281 We consider the sum of $3,000 as adequate to cover these additional elements of damage.
Accordingly, compensatory damages will be awarded to plaintiffs in the total sum of $10,000.
In awarding punitive damages the trial judge found that defendant was liable for his contractor's trespass on plaintiffs' lands when the pond was erected; that defendant "had to know" that the east wall of the pond would be very close to plaintiffs' line and that the natural flow of surface water would be altered in the area of the boundary line, and that defendant was recklessly insensitive to plaintiffs' rights in not taking a more conservative approach in planning and constructing the pond by not showing the boundary line to the contractor and in not consulting plaintiffs prior to planning the project so as to limit its bad effects. The judge said that "the admitted invasion" of the contractor's bulldozer "left the beginning of the east wall at different points," the height of the bank on plaintiffs' land going up to four feet. It concluded that the "substantial elements for punitive damages * * * are the reckless indifference of the defendant to the likelihood of trespass, amounting to * * * an intent to invade, the resulting sense of insult which I find the plaintiff[s] quite naturally felt, the need of [their] * * * seeking legal redress * * * with resulting expense, the need to remove the substantial earthwork construction deliberately put on * * * [plaintiffs'] land, the need to adjust road drainage to meet the influence of the pond embankment." It allowed $2,500 in punitive damages.
We find insufficient evidence to justify these findings. In any event, we have determined that, even if what the judge found were supported by the proofs, punitive *282 damages were not warranted. The matters referred to by the judge generally are more appropriately the subject of compensatory damages.
The record supports the conclusion that there was a lack of awareness by defendant that the contractor would trespass, and that soon after the trespass both defendant and the contractor endeavored to remedy the damage to plaintiffs' land resulting therefrom, even though the extent and effectiveness of that remedy were unsatisfactory to plaintiffs. There is inadequate evidence to show that defendant knew or had to know what the consequences of construction of the pond would be, as far as plaintiffs' land was concerned.
We find no evidence of either actual malice by defendant or any act or omission by him accompanied by a wanton and willful disregard of plaintiffs' rights. Under these circumstances, punitive damages should not have been awarded. See Neigel v. Seaboard Finance Co., 68 N.J. Super. 542 (App. Div. 1961); La Bruno v. Lawrence, 64 N.J. Super. 570 (App. Div. 1960), certif. den. 34 N.J. 323 (1961); Di Giovanni v. Pessel, 55 N.J. 188 (1970); Berg v. Reaction Motors Div., supra. See and compare Barber v. Hohl, 40 N.J. Super. 526, 530, 533-534 (App. Div. 1956); Security Corp. v. Lehman Associates, Inc., 108 N.J. Super. 137, 145 (App. Div. 1970).
In view of the foregoing, the judgment, to the extent it denies injunctive relief, is affirmed. In all other respects it is reversed and a judgment shall be entered awarding plaintiffs compensatory damages against defendant in the sum of $10,000, together with costs.
NOTES
[1] The work and materials involved in Burd's estimate include restoring the lot adjacent to the pond. Thus, allowing, in addition, the $6,000 for the devalued lot, testified to by Burd and requested by plaintiffs, in effect would result in a double recovery for the loss of that lot.