NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2142-17T3
A-2691-17T3
A-2709-17T3
A-3487-17T3

FINANCIAL SERVICES VEHICLE
TRUST,

       Plaintiff-Respondent,

v.

JAMES PANTER,

       Defendant-Appellant.

_____

NISSAN INFINITI LT,

       Plaintiff-Respondent,

v.

BENJAMIN A. FRATTO,

       Defendant-Appellant.

_____

SANTANDER CONSUMER USA,

       Plaintiff-Respondent,

v.

APPROVED FOR PUBLICATION

February 28, 2019

APPELLATE DIVISION

ALBARI M. EL,

    Defendant-Appellant.

_____

FINANCIAL SERVICES VEHICLE
TRUST,

    Plaintiff-Respondent,

v.

DEBORAH MOORE,

    Defendant-Appellant.

_____

> Argued January 15, 2019 – Decided February 28, 2019
>
> Before Judges Fisher, Suter and Firko.
>
> On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket Nos. SC-002133-17, SC-002646-17, SC-002661-17 and SC-000367-18.
>
> Kristin J. Vizzone argued the cause for appellant James Panter (Law Offices of Stephen E. Gertler, attorneys; Kristin J. Vizzone, on the brief).
>
> Jeffrey D. Noonan argued the cause for appellants Benjamin A. Fratto, Albari M. El, and Deborah Moore (Pomeroy, Heller & Ley, LLC, attorneys; Daniel J. Pomeroy, Karen E. Heller and Jeffrey D. Noonan, on the brief).
>
> Kari B. Samuels argued the cause for respondents.

A-2142-17T3

The opinion of the court was delivered by

FISHER, P.J.A.D.

In these four suits, lodged in the Small Claims Section of the Special Civil Part,[1] plaintiffs sought damages to redress the alleged diminished value of motor vehicles they claim to own. Defendants stipulated that the operation of their vehicles caused physical damage[2] to the vehicles in question, but they argue that the claim that each vehicle was also devalued by the stigma of having been in an accident is too speculative to be cognizable.

Each suit was the subject of a bench trial before the same judge; two of them – El and Fratto[3] – were tried the same day.[4] And each suit resulted in

---

[1] Awards in actions in the Small Claims Section are limited to $3000. R. 6:1-2(a)(2). Other Special Civil Part actions have a jurisdictional limit of $15,000. R. 6:1-2(a)(1).

[2] In one case, the negligence of the driver of the damaged vehicle was also a consideration; the judge's ruling on that particular question is not an issue here.

[3] For ease of reference, we will refer to these cases by the defendant's name when necessary to refer to them individually.

[4] Plaintiffs in all four cases were represented by the same attorneys. In three of the four cases, defendants were represented by the same attorneys. And plaintiff utilized the same expert who, in fact, was the only witness in all four cases. Because of the commonality of judge, counsel, and witness, we recognize that at times the trial in one case occasionally references testimony or a ruling applicable in another. We have thus viewed the transcripts and appellate records

A-2142-17T3

verdicts favorable to plaintiffs. Defendants' separate appeals – now consolidated for disposition through a single opinion – pose certain common questions. Although the cases involve relatively small damage awards,[5] the parties urgently seek our views on the issues raised because of what they claim is a statewide plethora of similar diminished value claims.

I

We chiefly direct our attention to the issue arising from the fact that each vehicle is mentioned in one or more databases that reveal to consumers the vehicle's accident history. The parties' dispute whether that fact alone gives rise to a tangible item of damage. They disagree about whether a vehicle, which has been repaired or restored to its pre-accident condition and function, can be said to have less "value" than an identical but never damaged vehicle. In other words these four cases ask the same question: all other things being equal, would you pay the same amount for a vehicle with an accident history as you would for a vehicle without?

_____

broadly to ensure our understanding of the scope of arguments raised and rebutted by the parties.

[5] Plaintiffs were awarded $2925, $1800, $1025, and $2500 in Panter, Fratto, El, and Moore, respectively.

A-2142-17T3

As a matter of law, we agree with plaintiffs that a motor vehicle owner –
like the owner of any other chattel – may recover for an additional reduction in
value when a vehicle has become less desirable for resale because of the stigma
of having once been damaged. We recognize that consequence might be
overlooked in many cases; property owners often seek compensation by
presenting only evidence about the cost of repair. See Parisi v. Friedman, 134
N.J.L. 273, 274 (E. & A. 1946). But the law has never limited compensation to
that element alone. To the contrary, our courts have long recognized that a
vehicle owner is entitled to recover the difference between the vehicle's value
before the harm and its value after, see Jones v. Lahn, 1 N.J. 358, 362 (1949);
Hintz v. Roberts, 98 N.J.L. 768, 770 (E. & A. 1923); Premier XXI Claims Mgmt.
v. Rigstad, 381 N.J. Super. 281, 283-84 (App. Div. 2005); Fanfarillo v. East End
Motor Co., 172 N.J. Super. 309, 313-14 (App. Div. 1980); Nixon v. Lawhon, 32
N.J. Super. 351, 354 (App. Div. 1954), which could, in appropriate cases,
involve any other non-speculative impact on the vehicle's value.

To be sure, the measure of damages might be impacted by other
circumstances beyond the mere cost of repair, such as a change in the
marketplace, Parisi, 134 N.J.L. at 274-75, depreciation, Fanfarillo, 172 N.J.
Super. at 313, and the loss of the vehicle's use, Restatement (Second) of Torts,

§ 928 (Am. Law Inst. 1979). Measuring damages might also be complicated by an owner's election not to repair prior to bringing suit. Premier XXI Claims Mgmt., 381 N.J. Super. at 284-85. But, when implicated, all these factors are soluble through the submission of adequate proof. Their implication does not bar recovery. Ibid.

Because the measure of damages is a product of the difference between the vehicle's pre-harm and post-harm value, the fact that the defendant's negligence has given the vehicle an accident history bears on its post-harm value. With the advent of databases such as CarFax, the consuming public now has the ability to learn whether a vehicle wears the "scarlet letter" of an accident history. Because the claims at hand rely on this newly-available source of information doesn't mean the information should be excluded when fixing damages in such a case. To the contrary, we hold that the damage caused by such a "scarlet letter" is just another factor that bears on value and is recoverable if supported by sufficient proof. See Restatement, § 928(a) (recognizing that damages are recoverable "for any difference between the original value and the value after repairs" (emphasis added)). An award based on this "scarlet letter" or "stigma" is not speculative but is consistent with our past recognition that damages may include such intangible concepts. Value is a concept based on

what a willing buyer would pay and a willing seller would accept when neither was under a compulsion to act. City of Trenton v. Lenzner, 16 N.J. 465, 476 (1954); accord Borough of Harvey Cedars v. Karan, 214 N.J. 384, 403 (2013). The "scarlet letter" or "stigma" for which plaintiffs here seek redress fits well within a proper calculus of damage to a motor vehicle.

As a matter of law, we cannot reject plaintiffs' theory that a willing buyer under no compulsion would be inclined to pay less for a vehicle with this so-called "scarlet letter." Such a claim is no more speculative than it is presumable. It is merely susceptible to proof. The owner of the claim remains obligated to persuade the factfinder with competent and admissible evidence that the vehicle's value has been decreased by this stigma.

That evidence must also provide an adequate framework by which the factfinder may ascertain the amount that would fairly compensate the owner because of that stigma without speculating. See Tessmar v. Grosner, 23 N.J. 193, 203 (1957) (holding that "where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery"); Borough of Fort Lee v. Banque Nat'l de Paris, 311 N.J. Super. 280, 291 (App. Div. 1998) (recognizing that "[d]amages need not be proved with precision where that is impractical or impossible . . . [s]o long as the record supports a reasonable

A-2142-17T3

estimate of damages, based upon more than mere speculation" (internal citations omitted)); Paolicelli v. Wojciechowski, 132 N.J. Super. 274, 278-79 (App. Div. 1975) (observing that evidence that affords "a basis for estimating damages with some reasonable degree of certainty is sufficient to support an award of compensatory damages"). The law recognizes not only that "absolute precision in fixing damages may not be attainable," but also that it would be unjust to deprive a plaintiff of a remedy merely because of "the absence of [the] means for precision." Am. Sanitary Sales v. State, Dep't of Treas., Div. of Purchase & Prop., 178 N.J. Super. 429, 435 (App. Div. 1981); see also Stanley Co. of Am. v. Hercules Powder Co., 16 N.J. 295, 314 (1954); V.A.L. Floors, Inc. v. Westminster Cmtys., Inc., 355 N.J. Super. 416, 424-25 (App. Div. 2002).

We agree with the trial judge's sound determination that the claim for the diminution in value because plaintiffs' vehicles bear the "scarlet letter" of an accident history was cognizable and an award to redress such a loss was not speculative.

II

Defendants also contend that plaintiffs in these actions did not sufficiently demonstrate their ownership of the vehicles. That contention, however, can mean multiple things. To be clear about the answer we provide, we must first

be clear about the question posed. In other words, the parties' arguments may have traipsed over all sorts of terrain on what it means to be an owner. But we must take care in answering the questions put to us that we do not answer those not properly raised or not supported by the record.

An entity holding title to the vehicle – such as a lessor – might be viewed as the "owner" of the vehicle in one sense, but the terms of a lease might also suggest that the real party in interest – the party who has truly been damaged by the reduction in the vehicle's value – is actually the lessee. The law provides examples of when the leasing of property is the equivalent or near equivalent of a transfer of ownership. A lease of real property for ninety-nine years renewable in perpetuity for the same term is, for many purposes, the equivalent of ownership. See City of Atlantic City v. Cynwyd Invs., 148 N.J. 55, 72 (1997). Similarly, a transfer of possession of a vessel via a bareboat charter is "tantamount to, though just short of, an outright transfer of ownership." Guzman v. Pichirilo, 369 U.S. 698, 700 (1962). Thus, there may be times where the mere fact that a party is a title holder of property does not entirely define or limit the rights of others who possess that property. And when possession of a vehicle is transferred by a less expansive lease, the right to a claim for a diminution of the vehicle's value still may not always reside with the title holder. A lease might,

for example, permit a lessee to purchase the vehicle outright at the end of the lease term for a specific, identified price. That fact suggests that the lessee may have a tangible interest in the outcome of a suit for the vehicle diminution in value because the purchase price applicable when the lease term ends – which was fixed at the lease's commencement – likely presupposed the eventual transfer of title to an unblemished vehicle. In other words, in that instance, the lessee might have suffered the loss of the diminution in value and, in that sense, may have a truer right to the claim than the lessor; yet, even then, the identity of the equitable owner of that claim is dependent upon whether the lessee exercises the option to buy-out the vehicle at the end of the lease term.

All these potential variations on what it means to be an "owner" of either the vehicle or the claim in this setting are interesting and may some day pose formidable questions on appeal. But those arguments are not presented here. We discern defendants' arguments as focusing only on whether plaintiffs were the title holders at the time the damage was caused. That is the question to which we address our following comments.

In responding to defendants' ownership arguments, we agree that a plaintiff – when the issue is disputed – has an obligation to prove ownership of the damaged property. In three of the cases before us – Moore, El, and Fratto –

A-2142-17T3

defendants argue that the proofs were insufficient to establish that those plaintiffs were the owners of the vehicles when they were damaged.[6]

In <u>Moore</u>, plaintiff Financial Services Vehicle Trust moved into evidence a certificate of title showing it to be the owner of the vehicle, as well as a lease showing that the vehicle was leased to Carla M. Camerieri, and a police report identifying Camerieri as the operator of the vehicle when it was struck by Moore's vehicle. The defense did not dispute that the accident occurred on June 19, 2016, approximately four months into a thirty-six-month lease term. Instead, at trial, the defense objected to the admission of these documents, not because they were irrelevant and not necessarily – although it is not entirely clear – because they weren't sufficiently authenticated. The defense chiefly argued at trial that because plaintiff failed to comply with a notice in lieu of subpoena, which sought the appearance of a representative of plaintiff with knowledge of the lease and the ownership of the vehicle, the judge should not have assumed the authenticity of the documents nor assumed from those documents that plaintiff was the owner at the time of the accident. Defense counsel was particularly concerned, as he argued without success at trial, that the way in

---

[6] Defendant in <u>Panter</u> has not presented an argument about ownership. So, what we have said in Section III has no application to those parties and that appeal.

A-2142-17T3

which ownership was determined did not necessarily foreclose a future second action for the same relief from someone with a claim of ownership.

In El, which was tried the same day as Moore, defendant made similar objections, and plaintiff Santander Consumer USA provided similar documentation, such as a certificate of title, a lease,[7] and a police report. A slight wrinkle was added by the fact that these documents referred to the owner as CCAP Auto Lease Ltd., but Santander provided documentation from the Secretary of State's office suggesting it had acquired CCAP prior to the date of the accident. Again, defendant argued – and again without success – that the issue could not be fairly decided in light of plaintiff's failure to provide a witness about ownership as demanded through service on plaintiff of a notice in lieu of subpoena.

The Fratto case is somewhat different. In Fratto, plaintiff provided as proof of ownership a certificate of title that identified plaintiff Nissan Infiniti LT as the owner, but no lease was provided and the police report identified the owner as Nicholas J. Gregory. Nothing in the record – other than CarFax documentation – suggests that plaintiff leased the vehicle to Gregory. Unlike Moore and El, defendant did not argue at trial in Fratto that a notice in lieu of

---

[7] The lease was not moved into evidence, so it is not in the appellate record.

subpoena was served or, if it was, that plaintiff's failure to bring to court an appropriate representative interfered with defendant's ability to defend on the ownership issue.

Because these cases were commenced and prosecuted in the Small Claims Section, where the rules of evidence may be relaxed, N.J.R.E. 101(a)(2)(A), does not mean that when there is a genuine dispute about a critical fact – such as ownership – shortcuts may be taken to avoid sufficient proof on the issue. Even in the Small Claims Section, "critical facts must [still] be proved and not merely assumed." Triffin v. Quality Urban Hous. Partners, 352 N.J. Super. 538, 543 (App. Div. 2002). Because defendants' assertions about ownership were at least colorable in Moore and El, we agree with defendant that he was entitled to have plaintiff's representative produced at trial so that questions about what the documentation showed could be answered.

As a general matter, when a dispute about ownership includes none of the difficulties suggested earlier, a certificate of title may be sufficient and when the certificate is in proper form, it may be self-authenticating. N.J.R.E. 902(a). In both those cases, plaintiff produced certificates of title that may have been self-authenticating; the leasing documents, as well as the police report, if properly authenticated or when authentication is not in dispute, also provide

13

relevant information as to ownership. For example, if we assume the authenticity of the title, lease, and police report in <u>Moore</u>, the judge had ample grounds for concluding that plaintiff was the owner who possessed the right to pursue this claim. That is because the title revealed plaintiff's ownership, the lease identified the lessor, and the police report identified the driver of the vehicle as the lessor. That information more than amply demonstrated plaintiff's ownership. But it does not necessarily foreclose proof to the contrary. Defendant served plaintiff with a notice in lieu of subpoena and ostensibly had a right to cross-examine plaintiff's representative about ownership. We cannot – in the absence of defendant's opportunity to pursue that avenue – assume that, in <u>Moore</u>, defendant could not have shown doubts about ownership. And the same is true for <u>El</u>.

<u>Fratto</u> is different in the sense that defendant did not argue that a notice in lieu of subpoena was served or that he was desirous of cross-examining a representative of plaintiff. But, the documentation offered by plaintiff in seeking to prove ownership raised enough doubt as to require further illumination. As noted, on that topic the certificate of title said one thing while the police report said something else.

A-2142-17T3

Because defendants in <u>Moore</u>, <u>El</u>, and <u>Fratto</u> raised significant questions about the sufficiency of the evidence about ownership – albeit for slightly different reasons – we must vacate the judgments in those matters and remand for further proceedings on ownership. In <u>Moore</u> and <u>El</u>, plaintiff will be obligated to produce a representative fitting the description of the notice in lieu of subpoena that defendant formerly served. Although a similar claim about plaintiff's failure to produce a representative with personal knowledge in accord with a notice in lieu of subpoena was not urged in <u>Fratto</u>, because the evidence about ownership in <u>Fratto</u> was far from illuminating, we come to the same place – that plaintiff should produce a representative to testify about its ownership of the vehicle following today's remand in those three cases.[8]

---

[8] We would add our concerns about the extent to which the judge may have relied on CarFax documents or materials from similar databases for disposition of the ownership dispute. To be sure, certificates of title and police reports – when in proper form – may be self-authenticating and, thus, a witness or other extrinsic evidence would not be needed to lay the groundwork for their admission into evidence. N.J.R.E. 902. But it has not been shown to us – nor was it shown to the trial judge – that CarFax materials, or the like, are also self-authenticating. We recognize that an expert might rely on those unauthenticated materials in forming an opinion on value – as was done here – but for those materials to become evidential on some other issue – such as ownership, as here – some other avenue for their admission would be required. <u>See</u> <u>In re Commitment of E.S.T.</u>, 371 N.J. Super. 562, 572-73 (App. Div. 2004).

## III

Defendants argue that the proofs offered by plaintiffs on the diminution in value of the vehicles caused by the stigma of an accident history – a fact readily available to the consuming public through CarFax or other similar databases – was insufficient. Specifically, they claim the expert testimony offered by plaintiffs was speculative and conveyed only through net opinions. We disagree.

Even in the Small Claims Section, where the rules of evidence are relaxed, Triffin, 352 N.J. Super. at 543; N.J.R.E. 101(a)(2)(A), judges must ensure that experts provide more than net opinions. The net opinion rule prohibits experts from providing bare opinions that lack factual support. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011). To be admissible, a qualified expert must provide "the why and wherefore" that supports an opinion and not "a mere conclusion." Townsend v. Pierre, 221 N.J. 36, 54 (2015) (quoting Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 540 (App. Div. 1996)). Like the experienced trial judge, whose decision is entitled to appellate deference absent an abuse of discretion, Hisenaj v. Kuehner, 194 N.J. 6, 16 (2008), we are satisfied that the expert testimony offered in these four cases did not run afoul of the net opinion standard.

A-2142-17T3

In each case, the expert testified about the particular vehicle in question. He considered its make, model, age, and accident history and opined about its value with and without the stigma imposed by its accident history; all this came from his own considerable experience in the industry and the quite logical assumption that the accident history renders a vehicle less desirable on the open market than a vehicle without such a history. The fact that the expert may not have known the precise mileage of each car was hardly fatal; the expert utilized the mileage at the closest point in time to the accident and then estimated its likely mileage at the time of the accident by referencing data about the average mileage a vehicle may be driven per year. The process hardly differed from the quite permissible use of actuarial tables to forecast future pain and suffering in personal injury matters.

Defendants also contend that the expert should not have been permitted to opine about the value of the vehicles without having seen and inspected them. We find no merit in this contention. The expert testified that in this industry vehicles are valued without physical inspection "more often than not."[9] The

_____

[9] Defendants have also argued in at least <u>Panter</u> and <u>Fratto</u> (and we will assume for present purposes that all defendants made this argument, <u>see</u> n. 4) that plaintiffs failed to make the vehicles available for defendants' inspection. We do not view this as an impediment to plaintiffs' pursuit of diminution damages,

17

failure of the expert to conduct such an inspection – assuming an inspection was feasible in any of these cases – can certainly be elicited by the defense and the factfinder could certainly consider that failure for what it's worth when weighing the expert's testimony.

As Judge Michels once observed in speaking for this court, expert testimony is not rendered "inadmissible merely because it fails to account for some particular condition or fact which the adversary considers relevant." State v. Freeman, 223 N.J. Super. 92, 116 (App. Div. 1988); accord Creanga v. Jardal, 185 N.J. 345, 360 (2005).  We view defendants' arguments here no differently. They were free to point out the expert's purported omissions or his glossing over of those things the defense thought critical, and they were, of course, free to call an expert as the means of rebutting or criticizing plaintiffs' expert.  We do not agree with defendants, however, that the omission of those things they claim

---

particularly in the Small Claims Section.  Indeed, we are mindful that the attorneys for defendants were retained by defendants' insurers and, in light of the triggering accident in which their principals were doubtless aware, likely had an opportunity to investigate and document the damage to the vehicles prior to the commencement of these actions.  Absent a more compelling showing, we find no merit in the contention that a plaintiff's failure to make a vehicle available for inspection constitutes a basis for rejection of a claim such as this. A factfinder, of course, is always free to consider the failure to adequately respond to a reasonable and feasible request along these lines in considering the persuasiveness of a plaintiff's claim.

were crucial in the formation of an opinion about the effect of the accident-history stigma transformed the expert's opinions into inadmissible net opinions. Those matters just went to the opinions' weight or persuasiveness.

* * *

For these reasons, we vacate the judgments in <u>Fratto</u>, <u>El</u>, and <u>Moore</u>, and remand for further proceedings in conformity with what we have said in Section II of this opinion. We otherwise reject all the other arguments urged by defendants in all four matters.

The judgment under review in <u>Panter</u> is affirmed. The judgments in <u>Fratto</u>, <u>El</u>, and <u>Moore</u> are vacated and those matters remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2142-17T3